1   Craig S. Bloomgarden (SBN 110241)
    MANATT, PHELPS & PHILLIPS, LLP
2   11355 West Olympic Boulevard
    Los Angeles, CA 90064-1614
3   Telephone:   (310) 312-4000
    Facsimile:   (310) 312-4224
4   cbloomgarden@manatt.com

5   Brent G. Cheney (SBN 180429)
    PARKER, MILLIKEN, CLARK, O'HARA &
6   SAMUELIAN
    A Professional Corporation
7   555 S. Flower St., 30th Floor
    Los Angeles, California 90071-2440
8   Telephone:   (213) 683-6500
    Facsimile:   (213) 683-6669
9   bcheney@pmcos.com

10  Attorneys for Plaintiff
    SAN GABRIEL BASIN WATER QUALITY AUTHORITY

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14  SAN GABRIEL BASIN WATER QUALITY AUTHORITY, | Case No.  CV-02-4565-ABC(RCx) |
| 15                    Plaintiff, | *[Consolidated for pretrial purposes with Cases Nos. CV 02-5909-ABC(RCx), CV 02-6340-ABC(RCx), CV 02-6346-ABC(RCx), and CV 11-0382-ABC (RCx)]* |
| 16 | |
| 17              v. | |
| 18  AEROJET-GENERAL CORPORATION, et al., | **STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND RETENTION OF JURISDICTION** |
| 19                    Defendants. | |
| 20 | Judge:          Hon. Audrey B. Collins |
| 21 | |
| 22  CITY OF MONTEREY PARK, | Case No. CV 02-5909-ABC(RCx) |
| 23                    Plaintiff, | |
| 24              V. | |
| 25  AEROJET-GENERAL CORPORATION, et al., | |
| 26                    Defendants. | |
| 27 | |

28

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

---

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND
RETENTION OF JURISDICTION

382027

1

| | |
|---|---|
| SOUTHERN CALIFORNIA WATER COMPANY, | Case No. CV 02-6340-ABC(RCx) |
| Plaintiff, | |
| V. | |
| AEROJET-GENERAL CORPORATION, et al., | |
| Defendants. | |
| SAN GABRIEL VALLEY WATER COMPANY, | Case No. CV 02-6346-ABC(RCx) |
| Plaintiff, | |
| V. | |
| AEROJET-GENERAL CORPORATION, et al., | |
| Defendants. | |
| UNITED STATES OF AMERICA and CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, | Case No. CV 11-0382-ABC (RCx) |
| Plaintiffs, | |
| V. | |
| SEACHROME CORPORATION, et al., | |
| Defendants. | |
| AND RELATED CROSS AND THIRD-PARTY ACTIONS. | |

## STIPULATION

It is hereby stipulated by and between plaintiffs San Gabriel Basin Water Quality Authority ("WQA"), Golden State Water Company, which was formerly known as Southern California Water Company ("GSWC"), San Gabriel Valley Water Company

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN A
PROFESSIONAL
CORPORATION

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND RETENTION OF JURISDICTION

382027

- 2 -

("SGVWC") and the City of Monterey Park ("City") (collectively, "Water Entities"), on the one hand, and defendant Chevron U.S.A. Inc. ("Chevron"), on the other hand, through their respective counsel of record, as follows:

1.     The Water Entities and Chevron have reached a settlement which is set forth in that Agreement Among Certain Water Entities and Chevron U.S.A. Inc. ("Settlement Agreement"), a copy of which is attached hereto.

2.     Pursuant to the Settlement Agreement, the Water Entities and Chevron hereby request that the Court enter the [Proposed] Order re Dismissal and Retention of Jurisdiction as set forth below.

DATED: ~~July~~ August 23 2011          MANATT, PHELPS & PHILLIPS, LLP


By: _____
      CRAIG S. BLOOMGARDEN
      Attorneys for Plaintiff SAN GABRIEL
      BASIN WATER QUALITY AUTHORITY

DATED: ~~July~~ August 23, 2011          JENKINS & HOGIN LLP


By: _____
      JOHN C. COTTI
      Attorneys for Plaintiff CITY OF
      MONTEREY PARK

DATED: July ___, 2011          BROWNSTEIN HYATT FARBER SCHRECK,
                                            LLP


By: _____
      STEVEN L. HOCH
      Attorneys for Plaintiff GOLDEN STATE
      WATER COMPANY

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN A
PROFESSIONAL
CORPORATION

- 3 -

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND
RETENTION OF JURISDICTION

382027

1  ("SGVWC") and the City of Monterey Park ("City") (collectively, "Water Entities"), on

2  the one hand, and defendant Chevron U.S.A. Inc. ("Chevron"), on the other hand, through

3  their respective counsel of record, as follows:

4      1.      The Water Entities and Chevron have reached a settlement which is set forth

5  in that Agreement Among Certain Water Entities and Chevron U.S.A. Inc. ("Settlement

6  Agreement"), a copy of which is attached hereto.

7      2.      Pursuant to the Settlement Agreement, the Water Entities and Chevron

8  hereby request that the Court enter the [Proposed] Order re Dismissal and Retention of

9  Jurisdiction as set forth below.

10

11  DATED: July ___, 2011          MANATT, PHELPS & PHILLIPS, LLP

12

13

14                                By: _____
                                        CRAIG S. BLOOMGARDEN
15                                      Attorneys for Plaintiff SAN GABRIEL
                                        BASIN WATER QUALITY AUTHORITY
16

17  DATED: July ___, 2011          JENKINS & HOGIN LLP

18

19                                By: _____
                                        JOHN C. COTTI
20                                      Attorneys for Plaintiff CITY OF
                                        MONTEREY PARK
21  DATED: ~~July~~ 8/23 ___, 2011  BROWNSTEIN HYATT FARBER SCHRECK,
                                     LLP
22

23

24                                By: _Steve Hoch_____
                                        STEVEN L. HOCH
25                                      Attorneys for Plaintiff GOLDEN STATE
                                        WATER COMPANY
26

27

28

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

382027

- 3 -

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND
RETENTION OF JURISDICTION

4

DATED: ~~July~~ August 24, 2011

GLASER WEIL FINK JACOBS HOWARD AVCHEN & SHAPIRO, LLP

By: _Aaron P. Allan / BGC_
AARON P. ALLAN
Attorneys for Plaintiff SAN GABRIEL VALLEY WATER COMPANY

DATED: July 19, 2011

BINGHAM McCUTCHEN

By: _Denise J. Teller for_
JAMES J. DRAGNA
Attorneys for Defendant CHEVRON U.S.A. INC.

- 4 -

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND RETENTION OF JURISDICTION

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

382027

# Exhibit 1

## Agreement Among Certain
## Water Entities and Chevron U.S.A. Inc.

This Settlement Agreement ("Agreement") is made by and between the San Gabriel Basin Water Quality Authority ("WQA"), Golden State Water Company, which was formerly known as Southern California Water Company ("GSWC"), San Gabriel Valley Water Company ("SGVWC") and the City of Monterey Park ("City") (individually, a "Water Entity," collectively, the "Water Entities"), on the one hand, and Chevron U.S.A. Inc. ("Chevron"), which one or more of the Water Entities have alleged is a potentially responsible party ("PRP") in the South El Monte Operable Unit of the San Gabriel Valley Superfund Site ("SEMOU"), on the other hand.  At times, Chevron and the Water Entities are referred to collectively as the "Parties" and individually as a "Party."  This Agreement shall be deemed effective as of the last date on which Chevron and the Water Entities execute the Agreement (the "Effective Date").

1.    __Payments.__

A.    __Payments by Chevron.__  Chevron shall pay Five-Hundred-Seventy-Thousand Dollars ($570,000) to Special Master, Timothy P. Gallagher ("Special Master") within thirty (30) days of the Effective Date (the "Settlement Payment").  The Special Master shall deposit the Settlement Payment in an interest bearing account ("Trust Account").

B.    __Distribution of Settlement Payment by Special Master to WQA, DTSC and EPA.__ The Special Master shall distribute $228,000 of the Settlement Payment to WQA, $28,500 of the Settlement Payment to the State of California's Department of Toxic Substances Control ("DTSC") and $313,500 of the Settlement Payment to the United States Environmental Protection Agency ("EPA") within ten (10) days of the last of (a) the date a Consent Decree between EPA, DTSC, and Chevron that provides for distribution of the Settlement Payment in a manner not inconsistent with the terms of this Agreement ("CD") is entered into, approved by the Court and becomes final; and (b) either:  (1) the time, as set forth in Paragraph 4.B, has passed for notification of intent to file a Good Faith Application (as defined below) without such notification; (2) any such Good Faith Application is withdrawn; or (3) a timely Good Faith Application, as set forth in Paragraph 4.B, is approved by the Court and the order approving such Good Faith Application becomes final.  Concurrently with such distribution of the Settlement Payment, the Special Master shall distribute any interest (after taxes) earned on the Settlement Payment to WQA.  "Good Faith Application" as used in this Agreement shall mean an application to the Court for determination of good faith settlement pursuant to California Code of Civil Procedure sections 877 and 877.6, or similar federal statutes, common law, rules, or guidelines.

C.    __Return of Payment by Special Master to Chevron.__  If the Court refuses to enter the CD without material changes or refuses to grant the Good Faith Application, or if there is a final order denying entry of the CD, or the Good Faith Application, the Parties shall meet and confer before the Special Master regarding such Court refusal or final order for a thirty (30) day period. Within ten (10) days following the conclusion of this thirty (30) day period either the Water Entities acting collectively (but not individually), on the one hand, or Chevron, on the other hand, may elect to terminate this Agreement by providing written notice of termination to the other Parties; provided, however, the Water Entities may not elect to terminate if Chevron elects to proceed with distribution of the Settlement Payment notwithstanding such Court refusal or

1

final order. Within ten (10) days of any election to terminate pursuant to this paragraph, the Special Master shall return the Settlement Payment to Chevron and shall distribute any interest (after taxes) earned on the Settlement Payment to WQA. If, despite any such Court refusal or final order, the Parties do not terminate this Agreement pursuant to this Paragraph, then the Special Master shall distribute the Settlement Payment and any interest earned thereon pursuant to Paragraph 1.B above.

**2.     Distribution of Settlement Payment by WQA and EPA; Projects Covered by this Agreement.**

A.     The portion of the Settlement Payment received by WQA from the Special Master shall be deposited by WQA, along with any accrued interest thereon, in a manner consistent with this Paragraph 2.A. A portion of these funds shall be deposited into a ledger account designated by WQA as the "SEMOU PRP Group Account," which portion shall be distributed by WQA, in accordance with applicable WQA procedures, to or for the benefit of GSWC, SGVWC and the City (collectively the "Purveyors") to pay or partially pay for or reimburse the Purveyors for capital and/or Operating and Maintenance ("O&M") costs incurred or to be incurred in connection with volatile organic compound treatment for the following projects: GSWC SG-1 and SG-2; SGVWC Plant #8 and Plant G-4; City Wells Nos. 5, 6, 9, 12 and 15; and any sentinel or monitoring wells required by the California Department of Health Services ("DHS") for these projects. The remaining portion of these funds shall be deposited into a ledger account designated by WQA as the "WQA SEMOU Account," which portion shall be distributed by WQA, in accordance with applicable WQA procedures as follows: (1) to or for the benefit of the Purveyors to pay or partially pay for or reimburse the Purveyors for capital and/or O&M costs incurred or to be incurred in connection with the following projects: GSWC SG-1, SG-2, Garvey-1, Garvey-2 and Earle; SGVWC Plant #8 and Plant G-4; City Wells Nos. 1, 3, 5, 6, 9, 10, 12, 15 and Fern; and any additional volatile organic compound treatment facilities, perchlorate treatment facilities, 1,4 dioxane treatment facilities, hexavalent chromium treatment facilities, or any sentinel or monitoring wells required by the DHS for these projects; or (2) to or for the benefit of WQA to pay or partially pay for or reimburse WQA for capital and/or O&M costs incurred or to be incurred in connection with the Projects, WQA's Shallow Barrier Project, and/or WQA's treatment facility (including 1,4-dioxane treatment) at or near the former J.A. Bozung site.

B.     It is understood by the Parties that the portion of the Settlement Payment received by EPA is to be provided to WQA by EPA through a Cooperative Agreement with EPA that permits EPA to provide partial funding to WQA for certain of the projects identified above. It is further understood by the Parties that at least half of the portion of the Settlement Payment received by DTSC is to be provided to EPA which in turn is to provide it to WQA through the Cooperative Agreement. It is further understood by the Parties that WQA will provide portions of the Settlement Payment it receives from EPA (including portions EPA receives from DTSC) to GSWC, SGVWC and the City to help fund certain projects identified above pursuant to agreements between WQA, on the one hand, and GSWC, SGVWC and City, on the other hand. The refusal or failure of EPA or DTSC to provide such funding to WQA shall not provide the basis for termination of this Agreement.

2

352803.3

3.    **Mutual Releases.**

A.    Upon distribution of the Settlement Payment by the Special Master in accordance with Paragraph 1.B, **and except as set forth in Paragraphs 3.D, 3.E and 6 below,** each Water Entity will hereby release Chevron and its attorneys, insurers (relating solely to Chevron's involvement with the "Site" (as defined below)), officers, directors, successors and predecessors, employees and permitted assigns ("Chevron Releasees") for any and all costs, claims, demands, rights, duties, obligations, causes of action and litigation of each and every kind arising out of, directly or indirectly, groundwater Contamination (as defined below) within the geographic confines of the SEMOU that originated or is alleged to have originated from 2750 Rosemead Boulevard and 9420 Garvey Avenue, South El Monte, CA (the "Site") ("Water Entities' Released Claims"). "Contamination" as used in this Agreement shall mean, without limitation, any chemical, constituent, contaminant, material, pollutant, waste, any "hazardous substances" as that term is defined in Section 101(14) of CERCLA (42 U.S.C. §9601(14)) and any "hazardous materials" as defined in California Health and Safety Code § 25260, or any concomitant state or local laws.

B.    Upon distribution of the Settlement Payment by the Special Master in accordance with Paragraph 1.B, **and except as set forth in Paragraph 3.D. below,** Chevron will hereby release each Water Entity, and each of their respective attorneys, insurers (relating solely to the Water Entities involvement with the SEMOU), officers, directors, corporate parents, corporate or governmental successors and predecessors, officials, employees and permitted assigns ("Water Entity Releasees") for all costs, claims, demands, rights, duties, obligations, causes of action and litigation of each and every kind arising out of, directly or indirectly, groundwater Contamination that originated or is alleged to have originated in the SEMOU ("Chevron's Released Claims"). The foregoing is not a release of any defenses which any Chevron Releasee has or in the future may have with respect to claims which are excluded from and/or are not within the scope of the Water Entities' Released Claims, including claims as to which the Water Entities' releases become null and void pursuant to Paragraph 6 of this Agreement. In addition, should any Water Entity(ies) institute an action or proceeding against any Chevron Releasee for any claim arising out of, directly or indirectly, groundwater Contamination within the geographic confines of the SEMOU that is excluded from and/or is not within the scope of the Water Entities' Released Claims, including claims as to which the Water Entities' releases become null and void pursuant to Paragraph 6 of this Agreement, the foregoing is not a release of any counterclaims that such Chevron Releasee may assert against only the Water Entity(ies) that instituted the action.

C.    Each Party is aware that it may hereafter discover claims or facts in addition to or different from those it now knows or believes to be true with respect to the matters released herein. Nevertheless, **and except as set forth in Paragraphs 3.D, 3.E and 6 below,** it is the intention of each Party to fully, finally and forever settle and release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed between them in relation to groundwater Contamination in the SEMOU as provided in Paragraphs 3.A. and 3.B. above. In furtherance of such intention, **and except as set forth in Paragraphs 3.D, 3.E and 6 below,** each Party, for itself, its successors, assigns, and any and all persons taking by or through it, hereby knowingly and voluntarily waives all rights and benefits which are provided by the terms and provisions of section 1542 of the Civil Code of the State of California, or any comparable statute or law which may exist under the laws of the State of California, and the

3

Parties hereby acknowledge that this waiver is an essential and material term of this mutual release. The Parties, and each of them, acknowledge that Civil Code section 1542 provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Each Party understands and acknowledges that the significance and consequence of this waiver of Civil Code section 1542 is the waiver of any presently unknown Water Entities' Released Claims and Chevron's Released Claims (collectively, "Released Claims"), and that if any Party should eventually suffer additional damages arising out of the respective Released Claims, that Party will not be able to make any claim for those additional damages. Further, all Parties to this Agreement acknowledge that they consciously intend these consequences even as to claims for damages that may exist as of the Effective Date of this Agreement but which are not known to exist and which, if known, would materially affect the Parties' respective decision to execute this Agreement, regardless of whether the lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause.

D.      The releases set forth in this Agreement are not intended to and do not in any way compromise, release or affect any claims or rights any Party has now or may have in the future against any other Party arising from any written claim by, or action brought by, a person or entity not a Party to this Agreement for "toxic tort" claims, i.e., personal injury claims (or property damage claims only if the property damage is alleged in conjunction with the personal injury claim) resulting from groundwater Contamination from any cause whatsoever in the SEMOU. The Parties understand this paragraph 3.D. to apply to and include rights and claims asserted in the groundwater toxic tort cases previously pending in the Superior Court of the County of Los Angeles styled *In re: Groundwater Cases*, Judicial Council Coordination Proceeding No. 4135, and any future proceedings of a similar nature.

E.      The releases set forth in this Agreement are not intended to and do not in any way compromise, release or affect any claims or rights any Water Entity has now or may have in the future arising from the transportation, treatment, storage or disposal, or arrangement for the transportation, treatment, storage or disposal of Contamination at or from the Site that occurs after the Effective Date of this Agreement; provided, however, that passive migration of Contamination at or from the Site currently existing as of the Effective Date of this Agreement is included in the Water Entities' Released Claims, as set forth in Paragraph 3.A above.

4.      **Good Faith Settlement and Consent Decree.**

A.      The Water Entities shall support any Good Faith Application that Chevron or its officers, directors and employees may file in any Water Entity lawsuit referenced in Paragraph 7, except that the Water Entities reserve the right to disagree with and/or dispute Chevron's valuation of the settlement and/or allocation of the settlement proceeds to the Water Entities'

4

respective claims.  By indicating that they will so support an application for determination of good faith settlement, WQA and the Purveyors are in no way waiving any right that they may have to collect or sue for any funds from non-parties to this Agreement, except to the extent such claims are expressly released or barred herein.

B.     If Chevron intends to file a Good Faith Application, it shall give notice to the Water Entities of its intent to file a Good Faith Application within ten (10) days of the Effective Date, and shall thereafter file any Good Faith Application to be heard at or about the same time and date as the United States' motion for approval and entry of the CD unless otherwise ordered by the Court.  Chevron agrees to diligently pursue a ruling and final order on any Good Faith Application it files.

C.     The Water Entities shall not oppose entry of the CD, except that the Water Entities reserve the right to oppose the CD to the extent it is inconsistent with the terms of this Agreement.

D.     The Parties shall work with the Special Master, DTSC and EPA and use their best efforts to have the CD lodged with the Court within one-hundred eighty (180) days of the Effective Date.  The Special Master will request the Court to monitor the progress of the CD and assure its timely execution.  The Parties and the Special Master may request a status conference during the one hundred eighty day period to review progress towards the one-hundred eighty (180) day deadline.

5.     [Intentionally omitted.]

6.     **Representations and Warranties.**

A.     Chevron represents and warrants that the extent of its knowledge of soil, vapor and groundwater Contamination at the Site, has been fully and accurately disclosed in writing to EPA and/or the Regional Water Quality Control Board or as set forth in Exhibit B.  Chevron acknowledges that the Water Entities' releases set forth in Paragraph 3 above are expressly conditioned on the accuracy of the information so disclosed.  If Chevron did not so fully and accurately disclose the Site's condition as of the date it executes this Agreement, then the Water Entities' releases set forth in Paragraph 3 of this Agreement shall be null and void as to the Chevron Releasees only as to claims related to the information not so fully and accurately disclosed.

B.     Chevron further represents and warrants that it has not used or stored or released, and does not have any knowledge of historical usage or storage of or release of perchlorate, 1,4 dioxane or hexavalent chromium at the Site, except as disclosed in writing to EPA and/or the Regional Water Quality Control Board or as set forth in Exhibit B.  Chevron acknowledges that the Water Entities' releases set forth in Paragraph 3 above are expressly conditioned on this representation and warranty.  If Chevron has used or stored, or had any knowledge of historical usage or storage of, perchlorate, 1,4 dioxane or hexavalent chromium at the Site, then the Water Entities' releases set forth in Paragraph 3 of this Agreement shall be null and void as to the Chevron Releasees only as to claims related to the information not so fully and accurately disclosed.

5

7.    **Dismissal of Lawsuits and Counterclaims.**

A.    Each Water Entity agrees to dismiss, pursuant to the Stipulation of Dismissal attached hereto as Exhibit C, Chevron from the lawsuit it filed in the United States District Court for the Central District of California within ten (10) days of the date that the Settlement Payment is distributed by the Special Master in accordance with Paragraph 1.B. The Water Entities' respective lawsuits are styled: *San Gabriel Basin Water Quality Authority v. Aerojet-General Corp., et al.*, Case Number CV 02-4565 ABC (RCx); *City of Monterey Park v. Aerojet-General Corporation, et al.*, Case Number CV 02-5909 ABC (RCx); *Southern California Water Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6340 ABC (RCx); and *San Gabriel Valley Water Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6346 ABC (RCx). Unless and until the Settlement Payment is distributed by the Special Master in accordance with Paragraph 1.B, the Water Entities are not required to dismiss Chevron from the Water Entities' respective lawsuits filed in the United States District Court for the Central District of California.

B.    Chevron agrees to dismiss, pursuant to the Stipulation of Dismissal attached hereto as Exhibit C, its counterclaims against each Water Entity filed in the United States District Court for the Central District of California within ten (10) days of the date that the Settlement Payment is distributed by the Special Master in accordance with Paragraph 1.B. Chevron's counterclaims are part of the Master Third Party Complaint and Counterclaims that was filed in the cases styled as follows: *San Gabriel Basin Water Quality Authority v. Aerojet-General Corp., et al.*, Case Number CV 02-4565 ABC (RCx); *City of Monterey Park v. Aerojet-General Corporation, et al.*, Case Number CV 02-5909 ABC (RCx); *Southern California Water Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6340 ABC (RCx); and *San Gabriel Valley Water Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6346 ABC (RCx). Unless and until the Settlement Payment is distributed by the Special Master in accordance with Paragraph 1.B, Chevron is not required to dismiss its counterclaims against the Water Entities.

8.    **No Admissions.** This Agreement is a compromise of disputed claims, and is not evidence or an admission of fault or liability on the part of any Party, such liability being expressly denied.

9.    **Reservations of Rights Against Non-Parties.** All rights of WQA, the Purveyors, and Chevron against non-parties to this Agreement are expressly reserved. However, Chevron shall not initiate or maintain any legal action against non-parties to this Agreement for the purpose of recovering any sums paid by Chevron under this Agreement; provided, however, that Chevron reserves all rights to defend claims that may be brought against it by non-parties to this Agreement, including prosecution of third-party claims, cross-claims and counterclaims in connection with payment of sums other than the Settlement Payment.

10.   **Continuing Jurisdiction of the Court.** The Parties agree that the Court shall maintain jurisdiction over this Agreement for all purposes and agree to seek approval of the Court for that purpose.

11.   **Counterparts.** This Agreement shall be executed in counterparts, each of which shall be deemed an original, and all of which, taken together, shall constitute one and the same

352803.3

instrument. Signatures sent by facsimile shall be deemed originals and treated in all respects as originals. A copy of this Agreement shall be deemed to be an original for the purposes of satisfying the California and/or Federal Rules of Evidence or any other rules of evidence.

12.   **Approval.** Chevron acknowledges that execution of this Agreement by the Purveyors and WQA is conditioned upon any necessary approval of the terms of the Agreement by the respective governing bodies of the Purveyors and WQA. Chevron shall provide a signed counterpart of this Agreement to WQA and the Purveyors prior to this Agreement being presented as necessary to the governing bodies of WQA and the Purveyors.

13.   **Authority**. In signing below, each of the corporate and government entity Parties represents and warrants to the others that each is a duly organized or constituted entity, with all requisite power to carry out its obligations under this Agreement, and that the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of the board of directors or other governing body of such Party, and shall not result in a violation of such Party's organizational documents.

14.   **Governing Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of California.

15.   **Amendment**. No amendment of this Agreement shall be binding upon the Parties unless it is in writing and executed by all of the affected Parties.

16.   **Integration**. As between WQA and the Purveyors, on the one hand, and Chevron, on the other hand, this Agreement, together with the Exhibits hereto, sets forth all of the covenants, provisions, agreements, conditions and understandings with respect to the matters addressed in this Agreement and constitutes the final and complete agreement of the Parties with respect to such matters, and supersedes all previous negotiations between them and all drafts or other documents previously exchanged by them with respect to such matters. Each Party acknowledges that no other Party, or agent or attorney of any other Party has made any promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the matters addressed in this Agreement, to induce it to authorize the execution of this Agreement, and acknowledges that it has not authorized the execution of this Agreement in reliance upon any such promise, representation, or warranty not contained herein.

17.   **Further Action**. The Parties agree to and shall take such further action and execute and deliver such additional documents as may be reasonably required to effectuate the terms and conditions of this Agreement and to the extent consistent with the terms hereof.

18.   **Notices**.

A.   Any notices or other writings required to be distributed to the Parties pursuant to this Agreement shall be in writing addressed to a Party at the address of the Party as indicated on Exhibit A attached hereto or at such other address as subsequently may be specified by such Party in a written notice. Notices may be given by personal delivery, by certified mail, return receipt requested, or by overnight courier that provides a written confirmation of delivery. Notice given by personal delivery shall be deemed given and effective upon delivery. Notice given by certified mail, return receipt requested, shall be deemed given and effective two (2)

business days following mailing.  Notice given by overnight courier shall be deemed given and effective one (1) business day following mailing.

B.    It is each Party's obligation to notify the other Parties to this Agreement of any changes of addresses of those listed in Exhibit A to this Agreement.  If for any reason, the person or persons so listed are no longer available to receive said notice, the notice may be sent to the registered agent for service of process of the entity involved as listed with the Secretary of State of California, or any of its officers or directors, or as otherwise permitted under the law for service of process.  If the entity is a trust, the service may be on its current or last Trustee, or as otherwise permitted under the law for service of process.

19.    **No Assignment**.  No Party shall assign or otherwise transfer its rights or obligations under this Agreement without the prior written consent of all of the other Parties.

20.    **Joint Drafting and Negotiation**.  This Agreement has been jointly negotiated and drafted.  The language of this Agreement shall be construed as a whole according to its fair meaning and without regard to or aid of Civil Code Section 1654 or similar judicial rules of construction.  Each Party acknowledges that it has had the opportunity to seek the advice of experts and legal counsel prior to executing this Agreement, and that it is fully aware of and understands all of its terms and the legal consequences thereof.

21.    **Headings**.  Headings used in this Agreement are for reference only and shall not affect the construction of this Agreement.

22.    **No Third Party Beneficiaries**.  No third party, other than the Chevron Releasees as to the Water Entities' Released Claims only and the Water Entity Releasees as to Chevron's Released Claims only, shall be entitled to claim or enforce any rights under this Agreement.

23.    **Severability**.  In the event that any provision of this Agreement is determined by a court to be invalid, the court shall reform the provision in a manner that is both consistent with the terms of this Agreement taken as a whole and legally valid.  The remainder of this Agreement shall not be affected thereby.

24.    **Attorneys' Fees.**  As between the Parties only, each Party shall bear its own costs and attorneys' fees in connection with the above-described lawsuits and counter-claims and the negotiation, documentation, and consummation of this Agreement.  If an action or motion is instituted by any Party to this Agreement for breach of this Agreement or its terms, or for breach of any warranty or representation herein, or to interpret or enforce this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and other costs incurred therein, including all attorneys' fees and costs of suit incurred therein in connection with the executing and collecting upon a final judgment in that litigation, in addition to any other available relief.  Nothing contained in this Paragraph shall be deemed to authorize, or preclude (to the extent otherwise recoverable), the recovery of costs and attorneys' fees with respect to claims as to which, pursuant to Paragraph 6 above, the releases by the Water Entities are deemed null and void, or claims that are not released by this Agreement.

25.    **Successors and Permitted Assigns**.  All covenants and agreements contained in this Agreement by or on behalf of any of the Parties shall bind and inure to the benefit of their respective successors and permitted assigns under Paragraph 19, whether so expressed or not.

8

352803.3

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party: _Chevron U.S.A. Inc._

By: _(signature)_

Name: **Frank G. Soler**

Title: **Assistant Secretary**

Date: _22 April 2010_

9

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party: _City of Monterey Park_

By: _[signature]_

Name: _Donald McIntyre_

Title: _City Manager_

Date: _May 25, 2010_

9

352803.3

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party: *Golden State Water Company*

By: _D C̶A̶_ / *Glan Jamos*

*VP of Finance*

Name: *David Chang*

Title: *VP, Environmental Quality*

Date: *5/20/2010*

9

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party:  San Gabriel Basin WQA

By:  _Grace J Kast_

Name:  Grace J. Kast

Title:  Executive Director

Date:  June 17, 2010

9

352803.3

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party: San Gabriel Valley Water Company

By: _M.L. Whitehead_

Name: Michael L. Whitehead

Title: President

Date: June 4, 2010

352803.3

# Exhibit 2

## **ORDER**

Pursuant to the above Stipulation, IT IS HEREBY ORDERED:

1.      Plaintiffs' (the "Water Entities'") respective claims in the above-captioned actions (the "Actions") against Chevron U.S.A. Inc. ("Chevron"), only, are dismissed with prejudice as to the Water Entities' claims against Chevron arising out of, directly or indirectly, groundwater Contamination within the geographic confines of the SEMOU that originated or is alleged to have originated from 2750 Rosemead Boulevard and 9420 Garvey Avenue, South El Monte, CA (the "Site"), except to the extent subject to Paragraphs 3.D., 3.E. and 6 of the Settlement Agreement (which Paragraphs are incorporated into this Order by this reference). To the extent that the Water Entities' claims against Chevron in the Actions (i) concern groundwater Contamination in the geographic area of the SEMOU alleged to have originated from sites other than the Site or (ii) are subject to Paragraphs 3.D., 3.E. and 6 of the Settlement Agreement, the claims are dismissed without prejudice.

2.      In addition, Chevron's counterclaims, only, in the Actions against the Water Entities are dismissed with prejudice, except to the extent subject to (i) the final sentence of Paragraph 3.B of the Settlement Agreement or (ii) Paragraph 3.D. of the Settlement Agreement. To the extent that Chevron's counterclaims against the Water Entities are subject to (i) the final sentence of Paragraph 3.B of the Settlement Agreement or (ii) Paragraph 3.D. of the Settlement Agreement, the counterclaims are dismissed without prejudice.

3.      The Court agrees to retain jurisdiction to enforce the terms of the Settlement Agreement and resolve any disputes arising under the Settlement Agreement.

4.      The costs and attorneys' fees of the Water Entities and Chevron shall be borne as provided in the Settlement Agreement.

Dated: _____        By: _____

                                                  Judge of the U.S. District Court

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

- 5 -

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND
RETENTION OF JURISDICTION

382027

**PROOF OF SERVICE**

*San Gabriel Basin Water Quality Authority v. Aerojet-General Corporation, et al.*
USDC Case No. CV02-4565 ABC (RCx)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 555 South Flower Street, 30th Floor, Los Angeles, California 90071.

On August 26, 2011, I served the foregoing document described as **STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND RETENTION OF JURISDICTION**, on all interested parties:

☐ (BY HAND): By giving a true copy(ies) thereof in sealed envelope(s) to (name of service) for hand delivery to the office of the party(ies) listed above.

☒ (BY MAIL) By placing a true copy in envelope(s) addressed as referenced above. The envelope(s) were then sealed and deposited for collection and mailing in accordance with my employer's normal procedures. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service, with all postage prepaid, at Los Angeles, California, on the same day in the ordinary course of business.
☒ Service information continued on attached page

☒ (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"). The foregoing documents will be served by the court via NEF and hyperlink to the document. On August 26, 2011, I checked the CM/ECF docket for this case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission.
☒ Service information continued on attached page

☐ (BY OVERNIGHT DELIVERY) By placing a true copy in envelope(s) addressed as listed above. The envelopes were then sealed and deposited for collection and delivery in accordance with my employer's normal procedures. I am readily familiar with the firm's practice for collection and processing correspondence for overnight delivery. Under that practice it would be placed in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents.

☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 26, 2011 at Los Angeles, California.

_____
Mamie Clayton

PARKER MILLIKEN CLARK O'HARA & SAMUELIAN, A PROFESSIONAL CORPORATION

- 6 -

382027

# SERVICE LIST

*San Gabriel Basin Water Quality Authority v. Aerojet-General Corporation, et al.*
USDC Case No. CV02-4565 ABC (RCX)

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

**Tim M Agajanian**
tagajanian@murchisonlaw.com

**Aaron P Allan**
aallan@glaserweil.com

**Gabriel M Allen**
gabriel.allen@usdoj.gov

**Craig S Bloomgarden**
cbloomgarden@manatt.com,lwashington@manatt.com

**Thomas J Bois , II**
tbois@boismac.com

**Bradley L Bunch**
biztranz@netptc.net

**John Frank Cermak**
jcermak@bakerlaw.com

**Brent G Cheney**
bcheney@pmcos.com

**Monique E Cho**
mcho@morganlewis.com

**Robin M Cleary**
rcleary@seyfarth.com

**John C Cotti**
jcotti@localgovlaw.com

**William Benjamin DeClercq**
wdeclercq@allenmatkins.com

**James J Dragna**
jim.dragna@bingham.com,diane.abeyta@bingham.com

**Peter R Duchesneau**
pduchesneau@manatt.com

**Denise G Fellers**
denise.fellers@bingham.com

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND RETENTION OF JURISDICTION

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

1   **Michael A Francis**
    mfrancis@ddsffirm.com,blanga@ddsffirm.com
2
    **Christine Rogers Friar**
3   cfriar@morganlewis.com

4   **Frederic A Fudacz**
    ffudacz@nossaman.com
5
    **Byron P Gee**
6   bgee@nossaman.com

7   **Sarah Peters Gorman**
    sgorman@santa-clarita.com
8
    **Kara Elizabeth Granowitz**
9   granowitz@lbbslaw.com,jwatson@lbbslaw.com

10  **Marc R Greenberg**
    marc.greenberg@kyl.com,pam.lopez@kyl.com
11
12  **Barry C Groveman**
    r.woodfork@mpglaw.com
13
    **William Robert Hart**
14  courtdocs@hkclaw.com

15  **Tiffany R Hedgpeth**
    tiffany.hedgpeth@bingham.com
16
    **Chanda R Hinman**
17  hinmanc@dicksteinshapiro.com,birthav@dicksteinshapiro.com,cernas@dicksteinshapiro.com

18  **Lawrence A Hobel**
    lhobel@cov.com
19
20  **Steven L Hoch**
    shoch@bhfs.com
21
    **Sonja Ann Inglin**
22  singlin@bakerlaw.com

23  **Karen Mayann Johnson**
    kjohnson@wfbm.com
24
    **Mark David Johnson**
25  Mjohnson@manatt.com

26  **Lori Jonas**
    lori.jonas@usdoj.gov,efile_ees.enrd@usdoj.gov
27

28

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

- 8 -
STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND
RETENTION OF JURISDICTION

392027

24

1   **Adam Joshua Katz**
    adam.katz@usdoj.gov,EFILE_EDS.ENRD@USDOJ.GOV

2

3   **Matthew O'Rahilly Kovacs**
    mkovacs@wshblaw.com,amoya@wshblaw.com

4   **James F Kuhne , Jr**
    james.kuhne@kyl.com,racquel.sullivan@kyl.com,stephanie.frieburg@kyl.com

5

6   **Brian D Langa**
    blanga@ddsffirm.com

7   **James C Macdonald**
    JMacdonald@boismac.com

8

9   **Todd O Maiden**
    tmaiden@reedsmith.com,mjmeyers@reedsmith.com

10

11  **Michael G Martin**
    mgmartin@gravesandking.com

12  **Timothy D McCollum**
    biztran@pacbell.net

13

14  **Eric M McLaughlin**
    emclaughlin@reedsmith.com,cshanahan@reedsmith.com

15  **Jesse L Miller**
    jessemiller@reedsmith.com

16

17  **Brian Edward Moskal**
    brian.moskal@bingham.com

18  **Robert J Mulvihill**
    courtdocs@hkclaw.com

19

20  **Kari Lee Nieblas**
    kvozenilek@bhfs.com

21  **Robert S Niemann**
    rniemann@seyfarth.com

22

23  **David E Novitski**
    dnlaw@pacbell.net

24

25  **John G Nursall**
    swaindipolito@lawyer.com,jnursall@swaindipolito.com

26  **Peter A Nyquist**
    pete.nyquist@alston.com,catherine.wieman@alston.com

27

28  **Gregory J Patterson**
    g.patterson@mpglaw.com

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

382027

- 9 -

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND
RETENTION OF JURISDICTION

25

1

**Carolyn L Rhoades**
crhoades@bhfs.com

2

**Amy L Rubinfeld**
rubinfelda@dicksteinshapiro.com,schanzf@dicksteinshapiro.com,birthav@dicksteinshapiro.com,

3

cernas@dicksteinshapiro.com

4

**Ann Rushton**
ann.rushton@doj.ca.gov,gwen.blanchard@doj.ca.gov

5

6

**Alfred E Smith**
asmith@nossaman.com

7

**Paul K Smith**
smith@smithmyerslaw.com

8

9

**Mark Lawrence Stermitz**
mstermitz@crowleyfleck.com

10

**Michael L Swain**
mswain@swaindipolito.com,swaindipolito@lawyer.com

11

12

**Jennifer T Taggart**
jtaggart@ddsffirm.com

13

**Steven R Tekosky**
stevetekosky@ttsmlaw.com,kroberts@ttsmlaw.com

14

15

**Stephen A Tuggy**
stuggy@lockelord.com,Jchien@lockelord.com

16

17

**Kent Leeds Vallette**
kentvallette@aol.com

18

**David Scott Warmuth**
swarmuth@law888.com

19

20

**Catherine Mitchell Wieman**
catherine.wieman@alston.com

21

22

**David F Wood**
dwood@wshblaw.com

23

**Joseph S Wu**
jwulawyer@gmail.com

24

25

26

27

28

- 10 -

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND
RETENTION OF JURISDICTION

1

### SERVICE LIST

2

*San Gabriel Basin Water Quality Authority v. Aerojet-General Corporation, et al.*
USDC Case No. CV02-4565 ABC (RCX)

3

### COURT'S MANUAL NOTICE LIST

4

**Timothy P Gallagher**
Gallagher & Gallagher
1925 Century Park East   Suite 950
Los Angeles, CA 90067

5

6

**William E Hvidsten**
Aerojet-General Corp
P O Box 13222
Sacramento, CA 94111

7

8

9

**Colin Lennard**
Fulbright & Jaworski
555 South Flower Street, 41st Floor
Los Angeles, CA 90071

10

11

**Michael T McCall**
Walsworth Franklin Bevins and McCall
1 City Boulevard West   5th Fl
Orange, CA 92868-3677

12

13

14

**Vernon T Meador, III**
Morgan Lewis and Bockius
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132

15

16

**Craig A Moyer**
Manatt Phelps & Phillips
11355 W Olympic Blvd
Los Angeles, CA 90064-1614

17

18

19

**Robert Oliver**
AlvaradoSmith
1 MacArthur Place, Suite 200
Santa Ana, CA 92707

20

21

**Frederick W Pfaeffle**
Los Angeles County Counsel
500 West Temple Street, Room 652
Los Angeles, CA 90012

22

23

**Miguel Antonio Sanqui**
Paul Hastings Janofsky and Walker
515 South Flower Street, Suite 2500
Los Angeles, CA 90071

24

25

**Judith A Zipkin**
Lewis Brisbois Bisgaard & Smith
221 N Figueroa St, Ste 1200
Los Angeles, CA 90012-2601

26

27

28

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

- 11 -

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF DEFENDANT CHEVRON U.S.A. INC. AND RETENTION OF JURISDICTION

382027

27