1  KAREN P. AGELSON, State Bar No. 210602
   KAREN M. JOHNSON, State Bar No. 190115
2  WALSWORTH, FRANKLIN, BEVINS & McCALL, LLP
   1 City Boulevard West, Fifth Floor
3  Orange, California 92868-3677
   Telephone:  (714) 634-2522
4  Facsimile:   (714) 634-0686

5  Attorneys for Defendants
   QUAKER CHEMICAL CORPORATION and MULTI-
6  CHEMICAL PRODUCTS, INC.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  SAN GABRIEL BASIN WATER QUALITY AUTHORITY, | Case No. CV-02-04565 ABC (RCx) |
| 12         Plaintiff, | [Consolidated for pretrial purposes with Case Nos. CV 02-5909 ABC (RCx), CV 02-6340 ABC (RCx), CV 02-6346-ABC (RCx), and CV 11-0382-ABC (RCx)]) |
| 13  vs. | |
| 14  AEROJET-GENERAL CORPORATION, et al., | Judge:  Audrey B. Collins |
| 15         Defendants. | Ctrm:  680 |
| 16 | **QUAKER CHEMICAL CORPORATION AND MULTI-CHEMICAL PRODUCTS, INC.'S APPLICATION FOR GOOD FAITH SETTLEMENT DETERMINATION AND BAR ORDER** |
| 17 | |
| 18 | |
| 19 | Case No. CV 02-5909 ABC (RCx) |
| 20  CITY OF MONTEREY PARK, | |
| 21         Plaintiff, | |
| 22  vs. | |
| 23  AEROJET-GENERAL CORPORATION; et al., | |
| 24         Defendants. | |
| 25  SOUTHERN CALIFORNIA WATER COMPANY, | Case No. CV 02-6340 ABC (RCx) |
| 26 | |
| 27         Plaintiff, | |
| 28  vs. | |

| | |
|---|---|
| AEROJET-GENERAL CORPORATION; et al, <br><br> Defendants. | |
| SAN GABRIEL VALLEY WATER COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> AEROJET-GENERAL CORPORATION; et al., <br><br> Defendants. | Case No. CV 02-6346-ABC (RCx) |
| UNITED STATES OF AMERICA AND CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, <br><br> Plaintiffs, <br><br> vs. <br><br> SEACHROME CORPORATION; et al., <br><br> Defendants. | Case No. CV 11-0382-ABC (RCx) |
| AND RELATED THIRD-PARTY ACTIONS AND COUNTERCLAIMS | |

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.  INTRODUCTION**

Quaker Chemical Corporation ("Quaker") and Multi-Chemical Products, Inc. ("MCP") hereby submit this Memorandum of Points and Authorities in support of their Application for a Good Faith Settlement Determination and Bar Order that the settlement between Quaker and MCP, and Certain Water Entities[1]; Art Weiss, Inc.; Del Ray Enterprises, Inc.; and Art Weiss, was entered into in good faith within the meaning of California *Code of Civil Procedure* sections 877 and

---

[1] "Certain Water Entities" includes the San Gabriel Basin Water Quality Authority; Golden State Water Company, formerly known as Southern California Water Company; San Gabriel Valley Water Company; and the City of Monterey Park.

877.6, and is fair, reasonable, and consistent with the purpose of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA").

2.  **STATEMENT OF FACTS**

The South El Monte Operable Unit ("SEMOU") Superfund litigation involves claims arising out of contaminated groundwater and soil within multiple areas of the San Gabriel Valley. The United States Environmental Protection Agency ("USEPA") has divided the San Gabriel Superfund Site into six active areas, or Operable Units ("OUs"). The six Superfund OUs are formally designated by the USEPA as: (1) SEMOU; (2) Alhambra OU; (3) Baldwin Park OU; (4) El Monte OU; (5) Puente Valley OU; and (6) and Whittier Narrows OU. The SEMOU covers approximately eight square miles in the South Central portion of the San Gabriel Valley and encompasses the entire city of South El Monte, and parts of the cities of El Monte and Rosemead. It is bounded by the San Bernardino Freeway (I-10) to the North, the Pomona Freeway (Highway 60) to the South, the San Gabriel River Freeway (I-605) to the East, and Walnut Grove Avenue to the West. The SEMOU is also bounded by the Whittier Narrows OU to the south.

Between 1969 and 1992, MCP entered into leases with Art Weiss, Inc. ("AWI") for two parcels of property located at 2128 and 2200 North Merced Avenue in El Monte, California ("Property"). The Property is one of four properties for which AWI is sued in this action as a property owner, and MCP and Quaker have no relationship to AWI's other three properties. AWI alleges MCP formulated, mixed and packaged sealants and coatings for aerospace, construction and other industrial uses at the Property. AWI alleges Quaker is a successor-in-interest to the liabilities incurred, if any, by MCP because of MCP's operations at the Property. MCP is now dissolved.[2] (Declaration of Karen M. Johnson, ¶ 3.)

/ / /

/ / /

---

[2] In August of 1987, 100% of MCP's stock was sold to Quaker Sealants & Coatings Company, a Pennsylvania corporation owned by Quaker Chemical Corporation. In February 1991, Quaker Sealants & Coatings Company changed its name to Quaker Construction Products, Inc. MCP was dissolved in December of 1994 and Quaker Construction Products, Inc.'s assets related to its membrane and urethane business was sold to Carlisle Coatings & Waterproofing in 1994.

Five consolidated legal actions have been filed in United States District Court, Central District of California as follows:

1. *San Gabriel Basin Water Quality Authority v. Aerojet-General Corporation, et al.*, Case No. CV-02-4565 ABC (RCx), U.S. District Court, Central District of California, filed October 30, 2002;

2. *San Gabriel Valley Water Company v. Aerojet-General Corporation, et al.*, Case No. CV-02-6346 ABC (RCx), U.S. District Court, Central District of California, filed October 30, 2002;

3. *Southern California Water Company v. Aerojet-General Corporation, et al.*, Case No. CV-02-6340 ABC (RCx), U.S. District Court, Central District of California, filed October 30, 2002;

4. *The City of Monterey Park v. Aerojet-General Corporation, et al.*, Case No. CV-02-5909 ABC (RCx), U.S. District Court, Central District of California, filed October 30, 2002;

5. *United States of America, et al. v. Seachrome Corporation, et al.*, Case No. CV-11-00382 PSWL (FFMx), U.S. District Court, Central District of California, filed January 13, 2011.

These actions are hereafter referred to as "the Consolidated Actions". The Consolidated Actions were amended numerous times and are complex groundwater contamination cases.

On August 29, 2003, the USEPA issued Unilateral Administrative Order No. 2003-17 ("UAO") to forty-two potentially responsible parties ("PRPs") including AWI. The USEPA also issued an Interim Record of Decision ("IROD") in which it provided the proposed remedy for clean-up of volatile organic compounds it claims the PRPs released into the SEMOU groundwater. On November 29, 2005, the USEPA amended the IROD with an Explanation of Significant Differences ("ESD"). In the USEPA's UAO, it identified the Property as contributory, named AWI as a CERCLA Responsible Party in its capacity as a property owner, and also named Quaker in an alleged capacity as an operator of the Property.

On July 9, 2004, AWI and fifteen other defendants filed a Master Third Party Complaint naming MCP, and numerous other parties, as Third Party Defendants. The Master Third Party Complaint contains the following causes of action: contribution (per CERCLA § 9607(a) and §

1  9613(f)), declaratory relief (per CERCLA § 9613(g)), contribution (state law), declaratory relief
2  (state law), common law equitable indemnity; and breach of contract (AWI lease agreements).
3        On January 4, 2005, United States District Court Judge Audrey B. Collins ordered a stay of
4  the actions filed in 2002, and appointed Timothy Gallagher, Esq., as the Settlement Referee and
5  Special Master. The parties participated in numerous Mandatory Settlement Conferences with
6  Special Master Gallagher. After extensive negotiations, and with Special Master Gallagher's
7  assistance, on August 10, 2011, a settlement was reached between Quaker and MCP, and Certain
8  Water Entities; AWI; Del Ray Enterprises, Inc.; and Art Weiss to resolve the claims and cross-
9  claims at issue in the five Consolidated Actions for a total of $3,500,000. Of this amount, MCP's
10 insurers agreed to pay $838,600, and Quaker agreed to pay $213,600 for a total contribution of
11 $1,052,200 by Quaker and MCP. (Declaration of Karen M. Johnson, ¶ 3, Exhibit A.) The USEPA
12 and California Department of Toxic Substances Control agreed to this settlement which is the
13 subject of a proposed Partial Consent Decree. (Declaration of Karen M. Johnson, ¶ 4, Exhibit B.)
14       MCP's insurers and Quaker have funded settlement and now seek an Order for a Good Faith
15 Settlement Determination and Order barring any and all past, present, or future claims and cross-
16 claims against Quaker and MCP by any party (including any PRP under CERCLA or any joint
17 tortfeasor or co-obligor) for contribution, equitable comparative contribution, cost recovery, or full,
18 partial, or comparative indemnity, arising out of or related to, or in connection with, the issues
19 raised in the Consolidated Actions.
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

3. **QUAKER AND MCP'S SETTLEMENT SHOULD BE APPROVED PURSUANT TO CALIFORNIA *CODE OF CIVIL PROCEDURE* SECTIONS 877 AND 877.6 AND CERCLA 42 U.S.C. § 9601 *et seq.*

In reviewing a settlement, a court must determine the good faith of such settlement in accordance with California *Code of Civil Procedure* sections 877 and 877.6. In *Tech-Built v. Woodward Clyde Associates*, 38 Cal.3d 488 (1985), the California Supreme Court defined for the first time the meaning of "good faith settlement" as the term is used in California *Code of Civil Procedure* section 887.6:

> [t]he intent and policies underlying *section 877.6* require that a number of factors be taken into account including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. (Citations omitted). Finally, practical considerations obviously require that the valuation be made on the basis of information available at the time of settlement. [A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.

*(Tech-Bilt, supra,* 38 Cal.3d at 499.)

"The burden is upon the party objecting to the proposed settlement to prove an absence of good faith." (*North County Contractor's Ass'n v. Touchstone Ins. Services*, 27 Cal.App.4th 1085, 1091 (1994).) "The challenger must prove 'the settlement is so far out of the ballpark in relation to these factors as to be inconsistent with the equitable objectives of the statute.'" (*Id.*, citing *Tech-Bilt*, 38 Cal.3d at 499-500.)

"A judge charting the boundaries of good faith of necessity must avoid a rigid application of the factors set forth in *Tech-Bilt*." (*North County, supra,* 27 Cal.App.4th at 1090.) With this in mind, "practical considerations obviously require that the valuation be made on the basis of information available at the time of settlement." (*Tech-Bilt, supra,* 38 Cal.3d at 499.) "The ultimate determinate of good faith is whether the settlement is grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be." (*City of*

*Grand Terrace v. Sup. Ct.*, 192 Cal.App.3d 1251, 1262 (1987).) Finally, even after carefully weighing these elements, the Court is not expected to calculate the "reasonable range" with precision, "[a]n educated guess is the best a judge can do when deciding whether a settlement is made in good faith." (*North County, supra,* 27 Cal.App.4th at 1095.)

In *City of Grand Terrance v. Superior Court*, the court held that when good faith is not contested, one does not have to go through each *Tech-Bilt* factor in its motion for good faith settlement. Rather, that court held that "when no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient. (*City of Grand Terrance v. Superior Court*, 192 CA3d 1251, 1261 (1987).)

Here, it is proper for this Court to find the settlement between Quaker and MCP, and Certain Water Entities; AWI; Del Ray Enterprises, Inc.; and Art Weiss to be in good faith. Of the $3,500,000 settlement for AWI's four properties, the payment of $1,052,200 by MCP's insurers and Quaker is well within the "ball park" of Quaker and MCP's potential liability in the Consolidated Actions. This is true because the EPA originally demanded $7,377,549 for all four of AWI's four properties, only one of which involves Quaker and MCP. Since MCP is only responsible for the Property which it leased, one of the four AWI properties, $1,052,200 is within the "ballpark" of liability.

It should be noted that it is impossible to estimate Quaker and MCP's liability with any precision due to the complexity of this case, and the fluctuations in the costs of the SEMOU IROD and ESD work. However, such specificity is not required for a determination for a settlement to be found to be made in good faith. Indeed, in *U.S. v. Cannons Engineering Corp.*, the court found that precise data relevant to determining the total extent of harm caused and the role of each PRP is often unavailable. (*U.S. v. Cannons Engineering Corp*, 899 F.2d 79, 88 (1st Cir., 1990).)

Quaker and MCP's settlement is fair, reasonable, and consistent with the purpose of CERCLA, 42 U.S.C. § 9601 *et seq.*, in that while the USEPA has taken the position that it has to treat perchlorate contamination as part of the SEMOU remediation, MCP and Quaker did not contribute in any manner to the perchlorate contamination which makes up more than one-half of the costs the USEPA seeks in the Consolidated Actions. Thus, Quaker and MCP's share of the

$3,500,000 settlement, or $1,052,200, was made in good faith, is fair, reasonable, and within the "reasonable range" of Quaker and MCP's liability.

### 4. **CONCLUSION**

Based on the above, Quaker and MCP respectfully request that this Court grant this Application for Determination of Good Faith Settlement and issue an Order barring any and all past, present, or future claims and cross-claims against Quaker and MCP by any party (including any PRP under CERCLA or any joint tortfeasor or co-obligor) for contribution, equitable comparative contribution, cost recovery, or full, partial, or comparative indemnity, arising out of or related to, or in connection with, the issues raised in the Consolidated Actions.

Dated: April 2, 2012                    WALSWORTH, FRANKLIN, BEVINS & McCALL, LLP

                                        By: _____
                                        KAREN M. JOHNSON
                                        Attorneys for Defendants
                                        QUAKER CHEMICAL CORPORATION
                                        AND MULTI-CHEMICAL PRODUCTS, INC.

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 707 Wilshire Boulevard, Suite 3280, Los Angeles, California 90017.

On April 3, 2012, I served the within document(s) described as:

**QUAKER CHEMICAL CORPORATION AND MULTI-CHEMICAL PRODUCTS, INC.'S APPLICATION FOR GOOD FAITH SETTLEMENT DETERMINATION AND BAR ORDER**

[X]  (BY CM/ECF) on each person listed above by filing the document using the Court's CM/ECF system. Each of the persons served in this manner are listed as CM/ECF registered users.

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 3, 2012, at Los Angeles, California.

_____Shawn Hanley_____          _____(Signature)_____
(Type or print name)