IGNACIA S. MORENO
Assistant Attorney General
Environmental & Natural Resources Division
LORI JONAS
E-mail: lori.jonas@usdoj.gov
State Bar No. 158268
GABRIEL ALLEN
Environmental Enforcement Section
Environmental & Natural Resources Division
United States Department of Justice
P.O. Box 7611, Washington, D.C. 20044-7611
Telephone: (202) 514-4080
Attorneys for Plaintiff United States of America

KAMALA D. HARRIS
Attorney General of the State of California
SALLY MAGNANI
Senior Assistant Attorney General
BRIAN HEMBACHER
Supervising Deputy Attorney General
OLIVIA W. KARLIN
Deputy Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
State Bar No. 150432
Telephone: (213) 897-0473
Attorneys for Plaintiff California Department of Toxic Substances Control

[Additional Counsel listed on next page]

| | |
|---|---|
| UNITED STATES OF AMERICA and CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, <br><br> Plaintiffs, <br><br> v. <br><br> SEACHROME CORPORATION, *et al.*, <br><br> Defendants. | ) CIV. NO. : CV 02-4565 ABC (JCx) <br> ) <br> ) <br> ) **PARTIAL CONSENT DECREE** <br> ) [Consent Decree with TDY Industries, LLC, <br> ) f/k/a TDY Industries, Inc., f/k/a Teledyne <br> ) Industries, Inc.] <br> ) <br> ) <br> ) [consolidated for pretrial and trial <br> ) purposes with CV 11-0382 ABC <br> ) (JCx); CV 02-5909ABC (JCx); CV <br> ) 02-6350 ABC (JCx); CV 02-6346 <br> ) ABC (JCx)] |

1   TIFFANY R. HEDGPETH
     Bingham McCutchen LLP
2   355 South Grand Avenue, Suite 4400
     Los Angeles, CA 90071-3106
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## I.  BACKGROUND

2    A.    The United States of America ("United States"), on behalf of the Administrator of

3 the United States Environmental Protection Agency ("EPA"), and the California Department of

4 Toxic Substances Control ("DTSC"), filed a complaint in this matter pursuant to Section 107 of

5 the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42

6 U.S.C. § 9607, as amended ("CERCLA"), seeking reimbursement of response costs incurred or

7 to be incurred for response actions taken or to be taken at or in connection with the release or

8 threatened release of hazardous substances at the South El Monte Operable Unit (the "Site") of

9 the San Gabriel Valley Area 1 Superfund Site in South El Monte,  Los Angeles County,

10 California.

11    B.    The Settlors, as defined herein, does not admit any liability to Plaintiffs arising

12 out of the transactions or occurrences alleged in the complaint.

13    C.    The decision by EPA on the remedial action to be implemented at the Site is

14 embodied in an Interim Record of Decision ("IROD"), executed on September 29, 2000.  The

15 IROD includes a responsiveness summary to the public comments.  Notice of the final plan was

16 published in accordance with Section 117(b) of CERCLA.  The IROD is attached as Appendix

17 A.

18    D.    EPA issued an Explanation of Significant Differences ("ESD") on November 10,

19 2005, addressing certain additional contamination treatment at the Site.  The ESD is attached as

20 Appendix B.

21    E.    The San Gabriel Basin Water Quality Authority ("WQA"), City of Monterey

22 Park, Golden State Water Company, and San Gabriel Valley Water Company (collectively, the

23 "Water Entities") have agreed to perform the funded portions of the IROD Work and the ESD

24 Work, subject to the terms and conditions of the executed agreement between EPA and WQA

25 regarding the Water Entities' continued performance of this IROD Work and the ESD Work

26 ("Cooperative Agreement").

27    F.    The United States, DTSC, and Settlors agree, and this Court by entering this

28 Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith,

1

1  that settlement of this matter will avoid prolonged and complicated litigation among the Parties,

2  and that this Consent Decree is fair, reasonable, and in the public interest.

3      THEREFORE, with the consent of the Parties to this Consent Decree, it is ORDERED,

4  ADJUDGED, AND DECREED:

5  **II.  JURISDICTION**

6      1.    This Court has jurisdiction over the subject matter of this action pursuant to 28

7  U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has personal jurisdiction

8  over Settlors.  Settlors consent to and shall not challenge entry of this Consent Decree or this

9  Court's jurisdiction to enter and enforce this Consent Decree.

10  **III.  PARTIES BOUND**

11      2.    This Consent Decree is binding upon the United States, DTSC, and upon the

12  Settlors and their successors and assigns.  Any change in ownership or corporate or other legal

13  status, including, but not limited to, any transfer of assets or real or personal property, shall in no

14  way alter the status or responsibilities of Settlors under this Consent Decree.

15  **IV.  DEFINITIONS**

16      3.    Unless otherwise expressly provided herein, terms used in this Consent Decree

17  which are defined in CERCLA or in regulations promulgated under CERCLA shall have the

18  meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are

19  used in this Consent Decree or in any appendix attached hereto, the following definitions shall

20  apply:

21      a.    "Basin-Wide Response Costs" shall mean response costs, including but not

22  limited to direct and indirect costs, including accrued Interest, of the United States and DTSC,

23  paid for basin-wide (non-operable unit) response actions in connection with the San Gabriel

24  Valley Superfund Sites, Areas 1 though 4, allocated to the Site.

25      b.    "CERCLA" shall mean the Comprehensive Environmental Response,

26  Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.

27

28

2

1      c.     "Consent Decree" shall mean this Consent Decree and all appendices attached

2 hereto. In the event of conflict between this Consent Decree and any appendix, this Consent

3 Decree shall control.

4      d.     "DTSC" shall mean the California Department of Toxic Substances Control and

5 any successor departments, agencies, or instrumentalities.

6      e.     "Day" shall mean a calendar day. In computing any period of time under this

7 Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the

8 period shall run until the close of business of the next working day.

9      f.     "DOJ" shall mean the United States Department of Justice and any successor

10 departments, agencies or instrumentalities of the United States.

11      g.     "Effective Date" shall mean the date on which this Consent Decree is entered by

12 the Court as recorded on the Court docket, or, if the Court instead issues an order approving the

13 Consent Decree, the date such order is recorded on the Court docket.

14      h.     "EPA" shall mean the United States Environmental Protection Agency and any

15 successor departments, agencies or instrumentalities of the United States.

16      i.     "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance

17 Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

18      j.     "Explanation of Significant Differences" or "ESD" shall mean the Explanation of

19 Significant Differences relating to the treatment of certain contamination at the Site, issued by

20 EPA on November 10, 2005.

21      k.     "ESD Work" shall mean all activities that implement the additional interim

22 remedial measures described in the ESD. The "ESD Work" does not include the "IROD Work."

23      l.     "Future IROD Response Costs" shall mean all response costs that are incurred by

24 the United States or DTSC for response actions with respect to the IROD Work (excluding

25 Future ESD Response Costs) after the Effective Date, including, but not limited to, direct and

26 indirect costs that are incurred by the United States or DTSC.

27      m.     "Future ESD Response Costs" shall mean all response costs that are incurred by

28 the United States or DTSC for response actions with respect to the ESD Work (excluding Future

3

1    IROD Response Costs) after the Effective Date, including, but not limited to, direct and indirect

2    costs that are incurred by the United States or DTSC.

3         n.    "Interim Record of Decision" or "IROD" shall mean the EPA Interim Record of

4    Decision relating to the Site signed on September 29, 2000 by the Regional Administrator, EPA

5    Region IX, or his/her delegate, and all attachments thereto.

6         o.    "IROD Work" shall mean all activities that implement the interim remedy

7    (addressing containment of the intermediate zone groundwater contamination present in the

8    northwestern part of the Site) described in the IROD. The "IROD Work" does not include the

9    "ESD Work."

10        p.    "Interest" shall mean interest at the rate specified for interest on investments of

11   the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded

12   annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate

13   of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject

14   to change on October 1 of each year.

15        q.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic

16   numeral or an upper or lower case letter.

17        r.    "Parties" shall mean the United States, DTSC, and the Settlors. "Party" shall

18   mean any one of the Parties.

19        s.    "Past Response Costs" shall mean all response costs, including, but not limited to,

20   direct and indirect costs of the United States and DTSC, paid at or in connection with the Site

21   through the Effective Date. "Past Response Costs" shall also include all past Basin-Wide

22   Response Costs, occurring on or before the Effective Date.

23        t.    "Plaintiffs" shall mean the United States and DTSC.

24        u.    "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. § 6901, et seq. (also

25   known as the Resource Conservation and Recovery Act).

26        v.    "Section" shall mean a portion of this Consent Decree identified by a Roman

27   numeral.

28

4

w.      "Settlors" shall mean TDY Industries, LLC (f/k/a TDY Industries, Inc., f/k/a Teledyne Industries, Inc.), its affiliates, including Allegheny Technologies Incorporated and TDY Holdings, LLC, and their officers, directors, shareholders, and corporate successors.

x.      "Site" shall mean the South El Monte Operable Unit of the San Gabriel Valley Area 1 Superfund Site, Los Angeles County, California, depicted generally on the map attached as Appendix C.

y.      "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

z.      "Water Entities" shall mean the San Gabriel Basin Water Quality Authority, City of Monterey Park, Golden State Water Company, and San Gabriel Valley Water Company.

## V. PAYMENT OF RESPONSE COSTS

4.      Payments by the Settlors. In consideration of the covenants contained in Section VII of this Consent Decree, Settlors shall pay to the Plaintiffs and Water Entities a total of $1.8 million plus Interest. Within 30 days of the Effective Date, the United States shall be paid $1,440,000 plus Interest accruing from the Date of Lodging. The payment in the amount of $360,000 shall be paid to the Water Entities as provided in the Settlement Agreement in the litigation between the Water Entities and the Settlors.

5.      All amounts to be paid to the United States pursuant to Paragraph 4 shall be deposited in the South El Monte Operable Unit Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund. In consideration of its agreement that all funds paid to Plaintiffs shall be so deposited and used by EPA, DTSC will be granted a credit pursuant to Section 104(c)(5)(A) of CERCLA, 42 U.S.C. § 9604(c)(5)(A) under the terms of a separate agreement between DTSC and EPA to be used by DTSC in any manner permitted by Section 104(c)(5)(F) of CERCLA, 42 U.S.C. § 9604(c)(5)(F).

6.      All Payments to the EPA Hazardous Substance Superfund shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in

5

1    accordance with the current EFT procedures, referencing EPA Region IX and Site Spill ID

2    Number 094X, and DOJ Case Number 90-11-2-09121/5. Payment shall be made in accordance

3    with instructions provided to Settlors by the Financial Litigation Unit of the U.S. Attorney's

4    Office in the Central District of California following lodging of the Consent Decree. Any

5    payments received by the Department of Justice after 4:00 p.m. Eastern Time shall be credited

6    on the next business day.

7         7.    At the time of payment, Settlors shall send notice that payment has been made, to

8    the United States (EPA and DOJ) in accordance with Section XIV (Notices and Submissions).

9              **VI. FAILURE TO COMPLY WITH CONSENT DECREE**

10       8.    <u>Interest on Late Payments</u>. If Settlors fail to make any payment under Paragraph

11    4 by the required due date, Interest shall continue to accrue on the unpaid balance through the

12    date of payment.

13       9.    <u>Stipulated Penalties</u>.

14       a.    If any amounts due under Paragraph 4 are not paid by the required due date, the

15    Settlors shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in

16    addition to the Interest required by Paragraph 8, $200 per day that any payment is late.

17       b.    Stipulated penalties are due and payable within 30 days of the date of the demand

18    for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be

19    identified as "stipulated penalties." All payments to EPA under this Paragraph shall be made by

20    certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The

21    check, or a letter accompanying the check, shall reference the name and address of the party(ies)

22    making payment, the Site name, EPA Region IX, and Site Spill ID Number 0927, and DOJ Case

23    Number 90-11-2-09121/5, and shall be sent to:

24            EPA Superfund
              US EPA

25            Region 9

26            Attn: Superfund Accounting
              P.O. Box 360863M

27            Pittsburgh, PA 15251

28

1    At the time of the payment, Settlors shall send notice that payment has been made, to the

2   United States, EPA and DOJ and DTSC in accordance with Section XIV (Notices and

3   Submissions).

4       c.      Penalties shall accrue as provided in this Paragraph regardless of whether EPA

5   has notified the Settlors of the violation or made a demand for payment, but need only be paid

6   upon demand. All penalties shall begin to accrue on the day after payment is due and shall

7   continue to accrue through the date of payment. Nothing herein shall prevent the simultaneous

8   accrual of separate penalties for separate violations of this Consent Decree.

9       10.     Payments made under this Section shall be in addition to any other remedies or

10  sanctions available to Plaintiffs by virtue of Settlors' failure to comply with the requirements of

11  this Consent Decree.

12      11.     Notwithstanding any other provision of this Section, the United States may, in its

13  unreviewable discretion, waive payment of any portion of the stipulated penalties that has

14  accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse the

15  Settlors from payment as required by Section V or from performance of any other requirements

16  of this Consent Decree.

17              **VII.  COVENANT NOT TO SUE BY PLAINTIFFS**

18      12.     Covenant Not to Sue by the United States.

19      a.      In consideration of the payments to be made pursuant to Section V of this Consent

20  Decree, and except as specifically provided in Section VIII (Reservation of Rights by Plaintiffs),

21  the United States covenants not to sue or to take administrative action against Settlors pursuant

22  to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of

23  RCRA, 42 U.S.C. § 6973, for the IROD Work, Past Response Costs, Future IROD Response

24  Costs, the ESD Work, and Future ESD Response Costs. This covenant not to sue is conditioned

25  upon the satisfactory performance by Settlors of their obligations under this Consent Decree.

26  This covenant not to sue extends only to Settlors and does not extend to any other person.

27      13.     Covenant Not to Sue by DTSC. Except as specifically provided in Section VIII

28  (Reservation of Rights by Plaintiffs), DTSC covenants not to sue or to take administrative action

7

1  against Settlors pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), or Health and

2  Safety Code Sections 25355.5, 25360, and 25323.5 for the IROD Work, Past Response Costs,

3  and Future IROD Response Costs, the ESD Work, and Future ESD Response Costs. This

4  covenant not to sue is conditioned upon the satisfactory performance by Settlors of their

5  obligations under this Consent Decree.  This covenant not to sue extends only to Settlors and

6  does not extend to any other person.

7  **VIII.   RESERVATION OF RIGHTS BY PLAINTIFFS**

8       14.    The United States and DTSC reserve, and this Consent Decree is without

9  prejudice to, all rights against Settlors with respect to all matters not expressly included within

10  the Covenants Not to Sue by United States and DTSC in Paragraphs 12 and 13.  Notwithstanding

11  any other provision of this Consent Decree, the United States and DTSC reserve all rights against

12  Settlors with respect to:

13       a.    liability for failure of Settlors to meet a requirement of this Consent Decree;

14       b.    criminal liability;

15       c.    liability for damages for injury to, destruction of, or loss of natural resources, and

16  for the costs of any natural resource damage assessments;

17       d.    liability, based upon Settlors' ownership or operation of the Site, or upon Settlors'

18  transportation, treatment, storage, or disposal, or the arrangement for the transportation,

19  treatment, storage, or disposal, of a hazardous substance or a solid waste at or in connection with

20  the Site, occurring after signature of this Consent Decree by Settlors;

21       e.    liability arising from the past, present, or future disposal, release or threat of

22  release of a hazardous substance, pollutant, or contaminant outside of the Site;

23       f.    liability for performance of response action or for reimbursement of response

24  costs with respect to any other operable unit of the San Gabriel Valley Superfund Site, including

25  but not limited to the response costs at the Whittier Narrows Operable Unit; and

26       g.    liability for performance of response action or for reimbursement of response

27  costs with respect to any response actions selected in any future response action decision

28

8

1  documents for the Site, which response actions are different from the activities required to
2  implement the IROD Work or the ESD Work.

### IX.  COVENANT NOT TO SUE BY SETTLORS

4       15.    Settlors covenants not to sue and agrees not to assert any claims or causes of
5  action against the Plaintiffs or their contractors or employees, with respect to the IROD Work,
6  Past Response Costs, Future IROD Response Costs, the ESD Work, and Future ESD Response
7  Costs or this Consent Decree. The covenants in this Paragraph are including but not limited to:
8       a.    any direct or indirect claim for reimbursement from the Hazardous Substance
9  Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§
10 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;
11      b.    any claim arising out of response actions at or in connection with the IROD Work,
12 Past Response Costs, Future IROD Response Costs, the ESD Work, and Future ESD Response
13 Costs, including any claim under the United States Constitution, the California Constitution, the
14 Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended,
15 or at common law; or
16      c.    any claim against the Plaintiffs pursuant to Sections 107 and 113 of CERCLA, 42
17 U.S.C. §§ 9607 and 9613, relating to the IROD Work, Past Response Costs, Future IROD
18 Response Costs, the ESD Work, and Future ESD Response Costs. These covenants not to sue
19 shall not apply in the event the United States or DTSC brings a cause of action or issues an order
20 pursuant to the reservations set forth in Paragraph 14(c)-(g), but only to the extent that Settlors'
21 claims arise from the same response action or response costs that the United States or DTSC is
22 seeking pursuant to the applicable reservation.
23      16.    Nothing in this Consent Decree shall be deemed to constitute approval or
24 preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or
25 40 C.F.R. 300.700(d).
26      17.    Settlors agree not to assert any claims and to waive all claims or causes of action
27 (including but not limited to claims or causes of action under Sections 107(a) and 113 of
28 CERCLA) that it may have for the IROD Work, Past Response Costs, Future IROD Response

1   Costs, the ESD Work and Future ESD Response Costs against any person.  This waiver shall not

2   apply with respect to any defense, claim, or cause of action that Settlors may have against any

3   person if such person asserts a claim or cause of action relating to the Site against Settlors.

4   Moreover, this waiver shall not apply to any causes of action Settlors have or may have against

5   any of its current or former insurance companies for payments required by this Consent Decree,

6   for costs incurred defending Plaintiffs' and the Water Entities' underlying causes of actions,

7   which are titled, respectively, *United States of America And California Department of Toxic*

8   *Substances Control v. Seachrome Corporation, et al,* Case Number CV 02-4565 ABC (JCx);

9   *San Gabriel Basin Water Quality Authority v. Aerojet-General Corp., et al.*, Case Number CV

10  02-4565 ABC (RCx); *City of Monterey Park v. Aerojet-General Corporation, et al.*, Case

11  Number CV 02-5909 ABC (RCx); *Southern California Water Company v. Aerojet-General*

12  *Corporation, et al.*, Case Number CV 02-6340 ABC (RCx); and *San Gabriel Valley Water*

13  *Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6346 ABC (RCx), or for

14  other relief.

## X.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

16          18.      Except as provided in Paragraph 17, nothing in this Consent Decree shall be

17  construed to create any rights in, or grant any cause of action to, any person not a Party to this

18  Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights

19  that any person not a signatory to this Decree may have under applicable law. Except as provided

20  in Paragraph 17, the Parties expressly reserve any and all rights (including, but not limited to,

21  any right to contribution), defenses, claims, demands, and causes of action which they may have

22  with respect to any matter, transaction, or occurrence relating in any way to the Site against any

23  person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United

24  States or DTSC, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3),

25  to pursue any such persons to obtain additional response costs or response action and to enter

26  into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

27          19.      The Parties agree, and by entering this Consent Decree this Court finds, that this

28  settlement constitutes a judicially-approved settlement for purposes of Sections 113(f)(2) of

CERCLA, 42 U.S.C. §§ 9613(f)(2) and that Settlors are entitled, as of the Effective Date of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. §§ 9613(f)(2), or as may be otherwise provided by law,  for "matters addressed" in this Consent Decree.  This protection from contribution actions or claims is conditioned upon the satisfactory performance by Settlors of their obligations under the Consent Decree.  The "matters addressed" in this Consent Decree as to Settlors are the IROD Work, Past Response Costs, and Future IROD Response Costs, the ESD Work and Future ESD Response Costs.  The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the Plaintiffs have reserved their respective rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States or DTSC asserts rights against Settlors coming within the scope of such reservations.

20.   Settlors shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA, DOJ, and DTSC in writing within 10 days of service of the complaint or claim upon it.  In addition, Settlors shall notify EPA, DOJ, and DTSC within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

21.   In any subsequent administrative or judicial proceeding initiated by the Plaintiffs for injunctive relief, recovery of response costs, or other relief relating to the Site, Settlors shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the Plaintiffs in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiffs set forth in Section VII.

## XI.  ACCESS AND INSTITUTIONAL CONTROLS

11

22. If the Site, or any facility at the Site, or any other property where access and/or land/water use restrictions are needed to implement response activities at the Site is owned or controlled by Settlors, Settlors shall:

a. commencing on the date of lodging of this Consent Decree, provide the Plaintiffs and their representatives, including EPA, DTSC, and their contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any response activity related to the Site, including, but not limited to, the following activities:

i. Monitoring, investigation, removal, remedial or other activities at the Site;

ii. Verifying any data or information submitted to the United States;

iii. Conducting investigations relating to contamination at or near the Site;

iv. Obtaining samples;

v. Assessing the need for, planning, or implementing additional response actions at or near the Site;

vi. Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settlors or their agents, consistent with Section XII (Access to Information);

vii. Assessing Settlors' compliance with this Consent Decree; and

viii. Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b. commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity or protectiveness of the remedial measures to be performed at the Site; and

c. If DTSC or EPA determines that institutional controls in any form are required to implement response activities at the Site, Settlors shall ensure the integrity and protectiveness thereof, or ensure non-interference therewith, execute and record all such necessary legal instruments, and fully cooperate with DTSC and with EPA in their efforts to secure and enforce

12

1    such institutional controls.  Institutional controls shall include deed restrictions, land use

2    covenants, environmental restrictions, as well as any layers of additional protection in the form

3    of state or local laws, regulations, ordinances or other governmental instruments that serve the

4    purpose of institutional controls set forth above.

5         23.     Notwithstanding any provision of this Consent Decree, the United States and

6    DTSC retain all of their access authorities and rights, as well as all of their rights to require

7    land/water use restrictions, including enforcement authorities related thereto, under CERCLA,

8    RCRA, and any other applicable statute or regulations.

9                       **XII.  ACCESS TO INFORMATION**

10        24.     Settlors shall provide to EPA and DTSC, upon request, copies of all records,

11    reports, or information (hereinafter referred to as "records") within its possession or control or

12    that of its contractors or agents relating to activities at the Site, including, but not limited to,

13    sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample

14    traffic routing, correspondence, or other documents or information related to the Site.

15        25.     <u>Confidential Business Information and Privileged Documents.</u>

16        a.     Settlors may assert business confidentiality claims covering part or all of the

17    records submitted to EPA under this Consent Decree to the extent permitted by and in

18    accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. §

19    2.203(b).  Records determined to be confidential by EPA will be accorded the protection

20    specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies records

21    when they are submitted to EPA, or if EPA has notified Settlors that the records are not

22    confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart

23    B, the public may be given access to such records without further notice to Settlors.

24        b.     Settlors may assert that certain records are privileged under the attorney-client

25    privilege or any other privilege recognized by federal law.  If Settlors assert such a privilege in

26    lieu of providing records, they shall provide Plaintiffs with the following:  1) the title of the

27    record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name

28    and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the

privilege asserted.  However, no records created or generated pursuant to the requirements of this or any other settlement with the United States shall be withheld on the grounds that they are privileged.

26.     No claim of confidentiality shall be made with respect to any data, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other records evidencing conditions at or around the Site.

## XIII.  RETENTION OF RECORDS

27.     Until 10 years after the Effective Date, Settlors shall preserve and retain all records now in their possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

28.     After the conclusion of the document retention period in the preceding Paragraph, Settlors shall notify Plaintiffs at least 90 days prior to the destruction of any such records, and, upon request by Plaintiffs, Settlors shall deliver any such records to Plaintiffs.  Settlors may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settlors assert such a privilege, they shall provide Plaintiffs with the following:  1) the title of the record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted.  However, no records created or generated pursuant to the requirements of this or any other settlement with the Plaintiffs shall be withheld on the grounds that they are privileged.

29.     Settlors hereby certify individually that, to the best of their knowledge and belief, after reasonable inquiry, they have not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to their potential liability regarding the Site since notification of potential liability by the United States or the filing of suit against them regarding the Site and that they have fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

1                               **XIV. NOTICES AND SUBMISSIONS**

2          30.      Whenever, under the terms of this Consent Decree, notice is required to be given

3 or a document is required to be sent by one party to another, it shall be directed to the individuals

4 listed below, unless those individuals or their successors give notice of a change to the other

5 Parties in writing. Written notice as specified herein shall constitute complete satisfaction of any

6 written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ,

7 DTSC, and Settlors, respectively.

8 For Notice to the United States:

9          Chief, Environmental Enforcement Section
         Environment and Natural Resources Division
10          U.S. Department of Justice
         P.O. Box 7611
11          Washington, D.C. 20044-7611
12          Re: DJ # 90-11-2-09121/5

13          Rachelle Thompson
14          Remedial Project Manager
         U.S. Environmental Protection Agency
15          Region 9
         75 Hawthorne Street,
16          San Francisco, CA 94105

17          Jane Diamond
18          Director, Superfund Division
         United States Environmental Protection Agency
19          Region 9
         75 Hawthorne Street,
20          San Francisco, CA 94105

21

22 For Notice to DTSC, and California Attorney General

23          Stewart Black
         Deputy Director for Brownfields and Environmental Restoration Program
24          Department of Toxic Substances Control
         P.O. Box 806
25          Sacramento, California 95812

26          Christine Bucklin
27          Department of Toxic Substances Control
         5795 Corporate Avenue
28          Cypress, California 90630

Olivia W. Karlin
Deputy Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, California 90013

For Notice to the Settlors:

Elliot S. Davis
Senior Vice President, General Counsel, Chief Compliance Officer and Corporate
Secretary
1000 Six PPG Place
Pittsburgh, PA 15222

## XV.  RETENTION OF JURISDICTION

31.   This Court shall retain jurisdiction over this matter for the purpose of interpreting
and enforcing the terms of this Consent Decree.

## XVI.  INTEGRATION/APPENDICES

32.   This Consent Decree and its appendices constitute the final, complete, and
exclusive agreement and understanding among the Parties with respect to the settlement
embodied in this Consent Decree.  The Parties acknowledge that there are no representations,
agreements, or understandings relating to the settlement other than those expressly contained in
and referred to, specifically the Settlement Agreement between the Settlors and Water Entities
referred to in Paragraph 4 and the state match credit agreement between EPA and DTSC in
Paragraph 5, in this Consent Decree.

33.   The following appendices are attached to and incorporated into this Consent
Decree:

Appendix A is the IROD;

Appendix B is the ESD; and

Appendix C is the map of the Site.

## XVII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

34.   This Consent Decree shall be lodged with the Court for a period of not less than
30 days for public notice and comment.  The United States reserves the right to withdraw or

16

1   withhold its consent if the comments regarding the Consent Decree disclose facts or

2   considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.

3   Settlors consent to the entry of this Consent Decree without further notice.

4         35.    If for any reason this Court should decline to approve this Consent Decree in the

5   form presented, this agreement is voidable at the discretion of any party and the terms of the

6   agreement may not be used as evidence in any litigation between the Parties.

7   **XVIII. SIGNATORIES/SERVICE**

8         36.    Each undersigned representative of Settlors to this Consent Decree, the Assistant

9   Attorney General for the Environment and Natural Resources Division of the United States

10   Department of Justice, and the Deputy Director for Brownfields and Environmental Restoration

11   Program of the California Department of Toxic Substances Control certifies that he or she is

12   authorized to enter into the terms and conditions of this Consent Decree and to execute and bind

13   legally such Party to this document.

14         37.    Settlors hereby agree not to oppose entry of this Consent Decree by this Court or

15   to challenge any provision of this Consent Decree, unless the United States or DTSC has notified

16   Settlors in writing that it no longer supports entry of the Consent Decree.

17         38.    Settlors shall identify, on the attached signature page, the name and address of an

18   agent who is authorized to accept service of process by mail or email on behalf of that Party with

19   respect to all matters arising under or relating to this Consent Decree, including for purposes of

20   Notices under Paragraph 30. Settlors hereby agree to accept service in that manner and to waive

21   the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and

22   any applicable local rules of this Court, including but not limited to, service of a summons. The

23   Parties agree that Settlors need not file an answer to the complaint in this action unless or until

24   the Court expressly declines to enter this Consent Decree.

25   **XIX. FINAL JUDGMENT**

26         39.    Upon approval and entry of this Consent Decree by the Court, this Consent

27   Decree shall constitute the final judgment between and among the Plaintiffs and the Settlors.

28

1   The Court finds that there is no just reason for delay and therefore enters this judgment as a final

2   judgment under Federal Rules of Civil Procedure 54 and 58.

3

4

5        SO ORDERED.

6

7

8

9

10  Date:_____

11                                    _____
                                      HONORABLE AUDREY B. COLLINS
12                                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

FOR THE UNITED STATES OF AMERICA, DOJ:


Date: _11/4/12_                    _Ignacia S. Moreno_
                                   IGNACIA S. MORENO
                                   Assistant Attorney General
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   Washington, D.C.  20530



Date: _10/25/12_                   _Lori Jonas_
                                   LORI JONAS
                                   GABRIEL ALLEN
                                   Environmental Enforcement Section
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   P.O. Box 7611
                                   Washington, D.C.  20044-7611

19

1

2    FOR THE UNITED STATES OF AMERICA, EPA:

3

4

5    Date: _9|7|2012_

6                                JANE DIAMOND

7                                Director of the Superfund Division

                               United States Environmental Protection Agency

8                                Region 9

                               75 Hawthorne Street

9                                San Francisco, CA  94105

10

11    Date: _9/7/2012_

12                                JAMES COLLINS

13                                LEWIS MALDONADO

                               United States Environmental Protection Agency

14                                Region 9

                               75 Hawthorne Street

15                                San Francisco, CA  94105

16

17

18

19

20

21

22

23

24

25

26

27

28

1

FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL, and CALIFORNIA
2   ATTORNEY GENERAL

3

4

5   Date: 8-28-32

6   STEWART W. BLACK
Deputy Director, Brownfields and
7               Environmental Restoration Program
Department of Toxic Substances Control
8   P.O. Box 806
Sacramento, California 95812
9

10

11

12   OLIVIA W. KARLIN
Deputy Attorney General
13   California Department of Justice
300 South Spring Street
14   Los Angeles, California 90013

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

1  FOR SETTLORS TDY INDUSTRIES, LLC (f/k/a TDY INDUSTRIES, INC., f/k/a TELEDYNE
2  INDUSTRIES, INC.), ALLEGHENY TECHNOLOGIES INCORPORATED, and TDY HOLDINGS, LLC

3

4  Representative Authorized to Sign:

5

6

7

8  Date: _8/10/12_       Signature: _Elliot S. D_____

9                        Name: _Elliot S. Davis_____

10                       Title: _Senior Vice President, General Counsel,_

11                       _Chief Compliance Officer and Corporate Secretary_
    Address: _1000 Six PPG Place_

12

13                       _Pittsburgh, PA 15222_

14

15

16

17  Agent Authorized to Accept Service and Notice:

18

19                       Name: _Elliot S. Davis_____

20                       Title: _Senior Vice President General Counsel,_

21                       _Chief Compliance Officer and Corporate_
    Address: _1000 Six PPG Place_         _Secretary_

22

23                       _Pittsburgh, PA 15222_

24

25

26

27

28

22