# Exhibit 1

**Agreement Among Certain Water Entities,
and Allegheny Technologies Incorporated and TDY Industries, LLC**

This Settlement Agreement ("Agreement") is made by and between the San Gabriel Basin Water Quality Authority ("WQA"), Golden State Water Company (formerly known as Southern California Water Company) ("GSWC"), San Gabriel Valley Water Company ("SGVWC") and the City of Monterey Park ("City") (individually, a "Water Entity," collectively, the "Water Entities"), on the one hand, and Allegheny Technologies Incorporated and TDY Industries, LLC (formerly known as TDY Industries, Inc.) (collectively "TDY"), which one or more of the Water Entities have alleged are potentially responsible parties ("PRP") in the South El Monte Operable Unit of the San Gabriel Valley Superfund Site ("SEMOU"), on the other hand. At times, TDY and the Water Entities are referred to collectively as the "Parties" and individually as a "Party." This Agreement shall be deemed effective as of the last date on which TDY and the Water Entities execute the Agreement (the "Effective Date").

1. **Payments.**

    A.    <u>Payments by TDY.</u> TDY, and each of them, jointly and severally, shall pay a total of one-million-eight-hundred-thousand dollars ($1,800,000) in two payments (the "Settlement Payments"). The first payment ("First Payment") of one-million-four-hundred-forty thousand dollars ($1,440,000) shall be paid to the United States Environmental Protection Agency ("EPA") pursuant to the Consent Decree among EPA, the California Department of Toxic Substances ("DTSC"), and TDY ("CD"). The second payment ("Second Payment") of three-hundred-sixty-thousand dollars ($360,000) shall be paid to the WQA within twelve months of the effective date of the CD. TDY, and each of them, jointly and severally, shall pay the Second Payment by wire transfer in accordance with wire transfer instructions to be provided by WQA.

    B.    <u>Right to Cancel Agreement.</u> If the Court refuses to enter the CD without material changes or refuses to grant a timely Good Faith Application, as set forth in Paragraph 4.B. below, or if there is a final order denying entry of the CD, or the Good Faith Application, the Parties shall meet and confer before the Special Master regarding such Court refusal or final order for a thirty (30) day period. Within ten (10) days following the conclusion of this thirty (30) day period, either the Water Entities acting collectively (but not individually), on the one hand, or TDY, on the other hand, may elect to terminate this Agreement by providing written notice of termination to the other Parties; provided, however, the Water Entities may not elect to terminate if TDY elects to proceed with distribution of the Settlement Payments notwithstanding such Court refusal or final order. If, despite any such Court refusal or final order, the Parties do not terminate this Agreement pursuant to this paragraph, then TDY must make the Settlement Payments as set forth in Paragraph 1.A. above. "Good Faith Application" as used in this Agreement shall mean an application to the Court for determination of good faith settlement pursuant to California Code of Civil Procedure sections 877 and 877.6, or similar federal statutes, common law, rules, or guidelines.

2.      **Distribution of Settlement Payment by WQA and EPA; Projects Covered by this Agreement.**

A.      The portion of the Settlement Payment received by WQA shall be deposited by WQA, along with any accrued interest thereon, in a manner consistent with this Paragraph 2.A. A portion of these funds shall be deposited into a ledger account designated by WQA as the "SEMOU PRP Group Account," which portion shall be distributed by WQA, in accordance with applicable WQA procedures, to or for the benefit of GSWC, SGVWC and the City (collectively the "Purveyors") to pay or partially pay for or reimburse the Purveyors for capital and/or Operating and Maintenance ("O&M") costs incurred or to be incurred in connection with volatile organic compound treatment for the following projects:  GSWC SG-1 and SG-2; SGVWC Plant #8  and Plant G-4; City Wells Nos. 5, 6, 9, 12 and 15; and any sentinel or monitoring wells required by the California Department of Health Services ("DHS") for these projects.  The remaining portion of these funds shall be deposited into a ledger account designated by WQA as the "WQA SEMOU Account," which portion shall be distributed by WQA, in accordance with applicable WQA procedures as follows:  (1) to or for the benefit of the Purveyors to pay or partially pay for or reimburse the Purveyors for capital and/or O&M costs incurred or to be incurred in connection with the following projects:  GSWC SG-1, SG-2, Garvey-1, Garvey-2 and Earle; SGVWC Plant #8 and Plant G-4; City Wells Nos. 1, 3, 5, 6, 9, 10, 12, 15 and Fern; and any additional volatile organic compound treatment facilities, perchlorate treatment facilities, 1,4 dioxane treatment facilities, hexavalent chromium treatment facilities, or any sentinel or monitoring wells required by the DHS for these projects; or (2) to or for the benefit of WQA to pay or partially pay for or reimburse WQA for capital and/or O&M costs incurred or to be incurred in connection with the Projects, WQA's Shallow Barrier Project, and/or WQA's treatment facility (including 1,4-dioxane treatment) at or near the former J.A. Bozung site.

B.      It is understood by the Parties that the portion of the Settlement Payments received by EPA is to be provided to WQA by EPA through a Cooperative Agreement with EPA that permits EPA to provide partial funding to WQA for certain of the projects identified above. It is further understood by the Parties that WQA will provide portions of the Settlement Payments it receives from EPA to GSWC, SGVWC and the City to help fund certain projects identified above pursuant to agreements between WQA, on the one hand, and GSWC, SGVWC and City, on the other hand.  The refusal or failure of EPA to provide such funding to WQA shall not provide the basis for termination of this Agreement.

3.      **Mutual Releases.**

A.      Upon payment of the First Payment to EPA in accordance with Paragraph 1.A, **and except as set forth in Paragraphs 3.D, 3.E, 3.F and 6 below,** each Water Entity will hereby release TDY, TDY Holdings, LLC, and each of them, and each of their respective attorneys, insurers (relating solely to TDY's involvement with the "Site" (as defined below)), officers, directors, successors and predecessors, employees and assigns ("TDY Releasees") for any and all costs, claims, demands, rights, duties, obligations, causes of action and litigation of each and every kind arising out of, directly or indirectly, groundwater Contamination (as defined below) within the geographic confines of the SEMOU that originated or is alleged to have originated from 1729-1817 Chico Avenue, South El Monte, CA (collectively, the "Site") ("Water Entities' Released Claims").  "Contamination" as used in this Agreement shall mean, without limitation, any chemical, constituent, contaminant, material, pollutant, waste, any

392534.2

"hazardous substances" as that term is defined in Section 101(14) of CERCLA (42 U.S.C. §9601(14)) and any "hazardous materials" as defined in California Health and Safety Code § 25260, or any concomitant state or local laws.

      B.    Upon payment of the First Payment to EPA in accordance with Paragraph 1.A, **and except as set forth in Paragraph 3.D. below,** TDY, and each of them, will hereby release each Water Entity, and each of their respective attorneys, insurers (relating solely to the Water Entities involvement with the SEMOU), officers, directors, corporate parents, corporate or governmental successors and predecessors, officials, employees and permitted assigns ("Water Entity Releasees") for all costs, claims, demands, rights, duties, obligations, causes of action and litigation of each and every kind arising out of, directly or indirectly, groundwater Contamination that originated or is alleged to have originated in the SEMOU ("TDY's Released Claims"). The foregoing is not a release of any defenses which any TDY Releasee has or in the future may have with respect to claims which are excluded from and/or are not within the scope of the Water Entities' Released Claims, including claims as to which the Water Entities' releases become null and void pursuant to Paragraph 6 of this Agreement. In addition, should any Water Entity(ies) institute an action or a proceeding against TDY for any claim arising out of, directly or indirectly, groundwater Contamination within the geographic confines of the SEMOU that is excluded from and/or is not within the scope of the Water Entities' Release Claims, including claims as to which the Water Entities' releases become null and void pursuant to Paragraph 6 of this Agreement, the foregoing is not a release of any counterclaims that TDY may assert against only the Water Entity(ies) that instituted the action.

      C.    Each Party is aware that it may hereafter discover claims or facts in addition to or different from those it now knows or believes to be true with respect to the matters released herein. Nevertheless, **and except as set forth in Paragraphs 3.D, 3.E, 3.F and 6 below,** it is the intention of each Party to fully, finally and forever settle and release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed between them in relation to groundwater Contamination in the SEMOU as provided in Paragraphs 3.A. and 3.B. above. In furtherance of such intention, **and except as set forth in Paragraphs 3.D, 3.E, 3.F and 6 below,** each Party, for itself, its successors, assigns, and any and all persons taking by or through it, hereby knowingly and voluntarily waives all rights and benefits which are provided by the terms and provisions of section 1542 of the Civil Code of the State of California, or any comparable statute or law which may exist under the laws of the State of California, and the Parties hereby acknowledge that this waiver is an essential and material term of this mutual release. The Parties, and each of them, acknowledge that Civil Code section 1542 provides as follows:

      **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

      Each Party understands and acknowledges that the significance and consequence of this waiver of Civil Code section 1542 is the waiver of any presently unknown Water Entities'

Released Claims and TDY's Released Claims (collectively, "Released Claims"), and that if any Party should eventually suffer additional damages arising out of the respective Released Claims, that Party will not be able to make any claim for those additional damages. Further, all Parties to this Agreement acknowledge that they consciously intend these consequences even as to claims for damages that may exist as of the Effective Date of this Agreement but which are not known to exist and which, if known, would materially affect the Parties' respective decision to execute this Agreement, regardless of whether the lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause.

D.      The releases set forth in this Agreement are not intended to and do not in any way compromise, release or affect any claims or rights any Party has now or may have in the future against any other Party or third party defendant arising from any written claim by, or action brought by, a person or entity not a Party to this Agreement for "toxic tort" claims, i.e., personal injury claims (or property damage claims only if the property damage is alleged in conjunction with the personal injury claim) resulting from groundwater Contamination from any cause whatsoever in the SEMOU. The Parties understand this paragraph 3.D. to apply to and include rights and claims asserted in the groundwater toxic tort cases previously pending in the Superior Court of the County of Los Angeles styled *In re: Groundwater Cases*, Judicial Council Coordination Proceeding No. 4135, and any future proceedings of a similar nature.

E.      The releases set forth in this Agreement are not intended to and do not in any way compromise, release or affect any claims or rights any Water Entity has now or may have in the future arising from TDY's transportation, treatment, storage or disposal, or arrangement for the transportation, treatment, storage or disposal of Contamination at or from the Site that occurs after the Effective Date of this Agreement; provided, however, that passive migration of Contamination at or from the Site currently existing as of the Effective Date of this Agreement is included in the Water Entities' Released Claims, as set forth in Paragraph 3.A above.

F.      The Water Entities' Released Claims set forth in Paragraph 3.A above are conditioned upon payment of all amounts due by TDY, and each of them, under Paragraph 1.A. Should TDY, or any of them, fail to make any of the Settlement Payments, then the Water Entities' Released Claims set forth in Paragraph 3.A above shall be null and void. Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the right of the Water Entities to pursue any other causes of action arising from TDY's breach of their payment obligations under this Agreement.

4.      **Good Faith Settlement and Consent Decree.**

A.      The Water Entities shall support any Good Faith Application that TDY or their officers, directors and employees may file in any Water Entity lawsuit referenced in Paragraph 7, except that the Water Entities reserve the right to disagree with and/or dispute TDY's valuation of the settlement and/or allocation of the settlement proceeds to the Water Entities' respective claims. By indicating that they will so support an application for determination of good faith settlement, WQA and the Purveyors are in no way waiving any right that they may have to collect or sue for any funds from non-parties to this Agreement, except to the extent such claims are expressly released or barred herein.

4

B.     If TDY intends to file a Good Faith Application, it shall give notice to the Water Entities of their intent to file a Good Faith Application within ten (10) days of the Effective Date, and shall thereafter file any Good Faith Application to be heard at or about the same time and date as the United States' motion for approval and entry of the CD unless otherwise ordered by the Court.  TDY agrees to diligently pursue a ruling and final order on any Good Faith Application it files.  In the event the Good Faith Application is filed before the time for TDY to make the Second Payment as provided in Paragraph 1.A. above, the Good Faith Application and any order by the Court approving the same shall be expressly conditioned upon TDY timely making the Second Payment.

C.     The Water Entities shall not oppose entry of the CD, except that the Water Entities reserve the right to oppose the CD to the extent it is inconsistent with the terms of this Agreement.

D.     The Parties shall work with the Special Master, DTSC and EPA and use their best efforts to have the CD lodged with the Court within one-hundred eighty (180) days of the Effective Date.  The Special Master will request the Court to monitor the progress of the CD and assure its timely execution.  The Parties and the Special Master may request a status conference during the one hundred eighty day period to review progress towards the one-hundred eighty (180) day deadline.

**5.**     [Intentionally omitted.]

**6.**     **Representations and Warranties.**

A.     TDY, and each of them, represent and warrant that the extent of each of their knowledge of soil, vapor and groundwater Contamination at the Site, has been fully and accurately disclosed in writing to EPA and/or the Regional Water Quality Control Board, including through the production of documents, or as set forth in Exhibit B.  TDY, and each of them, acknowledge that the Water Entities' releases set forth in Paragraph 3 above are expressly conditioned on the accuracy of this representation and warranty.  If TDY, or any of them, did not so fully and accurately disclose the Site's condition as of the date they execute this Agreement, then the Water Entities' releases set forth in Paragraph 3 of this Agreement shall be null and void as to the TDY Releasees only as to claims related to the information not so fully and accurately disclosed.

B.     TDY, and each of them, further represent and warrant that they have not used or stored or released, and do not have any knowledge of historical usage or storage of or release of perchlorate, 1,4 dioxane or hexavalent chromium at the Site, except as disclosed in writing to EPA and/or the Regional Water Quality Control Board, including through the production of documents, or as set forth in Exhibit B.  TDY, and each of them, acknowledge that the Water Entities' releases set forth in Paragraph 3 above are expressly conditioned on this representation and warranty.  If TDY, or any of them, have used or stored, or had any knowledge of historical usage or storage of, perchlorate, 1,4 dioxane or hexavalent chromium at the Site, then the Water Entities' releases set forth in Paragraph 3 of this Agreement shall be null and void as to the TDY Releasees only as to claims related to the information not so fully and accurately disclosed.

392534.2

7.     **Dismissal of Lawsuits, Counterclaims and Third-Party Claims.**

A.     Each Water Entity agrees that, within ten (10) days of TDY paying EPA the First Payment, it will sign and file with the Court a Stipulation of Dismissal substantially in the form attached hereto as Exhibit C, in order to dismiss TDY, and each of them, from the lawsuit it filed in the United States District Court for the Central District of California in the cases styled: *San Gabriel Basin Water Quality Authority v. Aerojet-General Corp., et al.*, Case Number CV 02-4565 ABC (RCx); *City of Monterey Park v. Aerojet-General Corporation, et al.*, Case Number CV 02-5909 ABC (RCx); *Southern California Water Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6340 ABC (RCx); and *San Gabriel Valley Water Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6346 ABC (RCx).  Unless and until the First Payment is paid to EPA in accordance with Paragraph 1.A., the Water Entities are not required to dismiss TDY, or any of them, from the Water Entities' respective lawsuits filed in the United States District Court for the Central District of California.

B.     TDY agrees that, within ten (10) days of TDY paying EPA the First Payment, they will sign and file with the Court a Stipulation of Dismissal substantially in the form attached hereto as Exhibit C, in order to dismiss its counterclaims against each Water Entity , and any third-party claims, filed in the United States District Court for the Central District of California in the cases styled as follows:  *San Gabriel Basin Water Quality Authority v. Aerojet-General Corp., et al.*, Case Number CV 02-4565 ABC (RCx); *City of Monterey Park v. Aerojet-General Corporation, et al.*, Case Number CV 02-5909 ABC (RCx); *Southern California Water Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6340 ABC (RCx); and *San Gabriel Valley Water Company v. Aerojet-General Corporation, et al.*, Case Number CV 02-6346 ABC (RCx).  Unless and until the Right to Cancel set forth paragraph 1.B has expired, TDY is not required to dismiss any counterclaims against the Water Entities or third-party claims.

8.     **No Admissions.**  This Agreement is a compromise of disputed claims, and is not evidence or an admission of fault or liability on the part of any Party, such liability being expressly denied.

9.     **Reservations of Rights Against Non-Parties.**  Except as otherwise provided in this Agreement, all rights of WQA, the Purveyors, and TDY against non-parties to this Agreement are expressly reserved.  Notwithstanding the foregoing, TDY shall not initiate or maintain any legal action against non-parties to this Agreement for the purpose of recovering any sums paid by TDY, or any of them, under this Agreement; provided, however, that (a) TDY's obligation to cease maintaining and to dismiss without prejudice their pending legal actions, if any, in federal district court to recover such sums from any non-party is contingent upon the agreement of such non-party against whom such claims were filed to waive any costs of suit that might arise from TDY's dismissal of such claims, or an order of the Court to that effect; (b) TDY reserve all rights to defend claims that may be brought against them by non-parties to this Agreement, including prosecution of third-party claims, cross-claims and counterclaims against such non-parties in connection with payment of sums other than the Settlement Payments; and (c) TDY reserve as to any sums paid hereunder all rights to assert claims under federal law, under or on the basis of any contract with the United States, that TDY might assert against the United States.  Moreover, TDY may maintain or pursue legal actions against its insurers for any payments required by this Settlement or the CD, for costs incurred defending the Water Entities' underlying causes of

actions identified in Paragraph 7(a) and the United States and DTSC's action titled *United States of America And California Department of Toxic Substances Control v. Seachrome Corporation, et al,* Case Number CV 02-4565 ABC (JCx) and for other relief.

**10.     Continuing Jurisdiction of the Court.**  The Parties agree that the Court shall maintain jurisdiction over this Agreement for all purposes and agree to seek approval of the Court for that purpose.

**11.     Counterparts.**  This Agreement shall be executed in counterparts, each of which shall be deemed an original, and all of which, taken together, shall constitute one and the same instrument.  Signatures sent by facsimile shall be deemed originals and treated in all respects as originals.  A copy of this Agreement shall be deemed to be an original for the purposes of satisfying the California and/or Federal Rules of Evidence or any other rules of evidence.

**12.     Approval.**  TDY, and each of them, acknowledge that execution of this Agreement by the Water Entities is conditioned upon any necessary approval of the terms of the Agreement by the respective governing bodies of the Water Entities.  TDY shall provide signed counterparts of this Agreement to Water Entities prior to this Agreement being presented as necessary to the governing bodies of WQA and the Purveyors.

**13.     Authority.**  In signing below, each of the corporate and government entity Parties represents and warrants to the others that each is a duly organized or constituted entity, with all requisite power to carry out its obligations under this Agreement, and that the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of the board of directors or other governing body of such Party, and shall not result in a violation of such Party's organizational documents.

**14.     Governing Law.**  This Agreement shall be construed and enforced in accordance with the laws of the State of California.

**15.     Amendment.**  No amendment of this Agreement shall be binding upon the Parties unless it is in writing and executed by all of the affected Parties.

**16.     Integration.**  As between WQA and the Purveyors, on the one hand, and TDY, on the other hand, this Agreement, together with the Exhibits hereto, sets forth all of the covenants, provisions, agreements, conditions and understandings with respect to the matters addressed in this Agreement and constitutes the final and complete agreement of the Parties with respect to such matters, and supersedes all previous negotiations between them and all drafts or other documents previously exchanged by them with respect to such matters.  Each Party acknowledges that no other Party, or agent or attorney of any other Party has made any promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the matters addressed in this Agreement, to induce it to authorize the execution of this Agreement, and acknowledges that it has not authorized the execution of this Agreement in reliance upon any such promise, representation, or warranty not contained herein.

**17.     Further Action.**  The Parties agree to and shall take such further action and execute and deliver such additional documents as may be reasonably required to effectuate the terms and conditions of this Agreement and to the extent consistent with the terms hereof.

18.   **Notices**.

A.     Any notices or other writings required to be distributed to the Parties pursuant to this Agreement shall be in writing addressed to a Party at the address of the Party as indicated on Exhibit A attached hereto or at such other address as subsequently may be specified by such Party in a written notice. Notices may be given by personal delivery, by certified mail, return receipt requested, or by overnight courier that provides a written confirmation of delivery. Notice given by personal delivery shall be deemed given and effective upon delivery. Notice given by certified mail, return receipt requested, shall be deemed given and effective two (2) business days following mailing. Notice given by overnight courier shall be deemed given and effective one (1) business day following mailing.

B.     It is each Party's obligation to notify the other Parties to this Agreement of any changes of addresses of those listed in Exhibit A to this Agreement. If for any reason, the person or persons so listed are no longer available to receive said notice, the notice may be sent to the registered agent for service of process of the entity involved as listed with the Secretary of State of California, or any of its officers or directors, or as otherwise permitted under the law for service of process. If the entity is a trust, the service may be on its current or last Trustee, or as otherwise permitted under the law for service of process.

19.   **No Assignment**. No Party shall assign or otherwise transfer its rights or obligations under this Agreement without the prior written consent of all of the other Parties.

20.   **Joint Drafting and Negotiation**. This Agreement has been jointly negotiated and drafted. The language of this Agreement shall be construed as a whole according to its fair meaning and without regard to or aid of Civil Code Section 1654 or similar rules of construction. Each Party acknowledges that it has had the opportunity to seek the advice of experts and legal counsel prior to executing this Agreement, and that it is fully aware of and understands all of its terms and the legal consequences thereof.

21.   **Headings**. Headings used in this Agreement are for reference only and shall not affect the construction of this Agreement.

22.   **No Third Party Beneficiaries**. No third party, other than the TDY Releasees as to the Water Entities' Released Claims only and the Water Entity Releasees as to TDY's Released Claims only, shall be entitled to claim or enforce any rights under this Agreement.

23.   **Severability**. In the event that any provision of this Agreement is determined by a court to be invalid, the court shall reform the provision in a manner that is both consistent with the terms of this Agreement taken as a whole and legally valid. The remainder of this Agreement shall not be affected thereby.

24.   **Attorneys' Fees.** As between the Parties only, each Party shall bear its own costs and attorneys' fees in connection with the above-described lawsuits and counter-claims and the negotiation, documentation, and consummation of this Agreement. If an action or motion is instituted by any Party to this Agreement for breach of this Agreement or its terms, or for breach of any warranty or representation herein, or to interpret or enforce this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and other costs incurred therein, including all attorneys' fees and costs of suit incurred therein in connection with the executing

8

and collecting upon a final judgment in that litigation, in addition to any other available relief. Nothing contained in this Paragraph shall be deemed to authorize, or preclude (to the extent otherwise recoverable), the recovery of costs and attorneys' fees with respect to claims as to which, pursuant to Paragraph 6 above, the releases by the Water Entities are deemed null and void, or claims that are not released by this Agreement.

25.    **Successors and Permitted Assigns**.  All covenants and agreements contained in this Agreement by or on behalf of any of the Parties shall bind and inure to the benefit of their respective successors and permitted assigns under Paragraph 19, whether so expressed or not.

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party: SAN GABRIEL BASIN WQA

By: _____

Name: KENNETH R. MANNING

Title: EXECUTIVE DIRECTOR

Date: 8/15/12

9

and collecting upon a final judgment in that litigation, in addition to any other available relief. Nothing contained in this Paragraph shall be deemed to authorize, or preclude (to the extent otherwise recoverable), the recovery of costs and attorneys' fees with respect to claims as to which, pursuant to Paragraph 6 above, the releases by the Water Entities are deemed null and void, or claims that are not released by this Agreement.

**25.    Successors and Permitted Assigns.**  All covenants and agreements contained in this Agreement by or on behalf of any of the Parties shall bind and inure to the benefit of their respective successors and permitted assigns under Paragraph 19, whether so expressed or not.

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party: _City of Monterey Park_

By: _____

Name:   Paul L. Talbot _____

Title:   City Manager _____

Date:   August 14, 2012 _____

9

392534.2

and collecting upon a final judgment in that litigation, in addition to any other available relief. Nothing contained in this Paragraph shall be deemed to authorize, or preclude (to the extent otherwise recoverable), the recovery of costs and attorneys' fees with respect to claims as to which, pursuant to Paragraph 6 above, the releases by the Water Entities are deemed null and void, or claims that are not released by this Agreement.

25.   **Successors and Permitted Assigns**.  All covenants and agreements contained in this Agreement by or on behalf of any of the Parties shall bind and inure to the benefit of their respective successors and permitted assigns under Paragraph 19, whether so expressed or not.

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party:   Golden State Water Company

By: _____

Name:  Denise L. Kruger

Title:  Sr. Vice President – Regulated Utilities

Date: _August 15, 2012_____

By: _____

Name:  Gladys M. Farrow

Title:  Vice President – Finance, Treasurer & Assistant Secretary

Date: _August 20, 2012_____

9

and collecting upon a final judgment in that litigation, in addition to any other available relief.
Nothing contained in this Paragraph shall be deemed to authorize, or preclude (to the extent
otherwise recoverable), the recovery of costs and attorneys' fees with respect to claims as to
which, pursuant to Paragraph 6 above, the releases by the Water Entities are deemed null and
void, or claims that are not released by this Agreement.

**25.**   **Successors and Permitted Assigns.**  All covenants and agreements contained in this
Agreement by or on behalf of any of the Parties shall bind and inure to the benefit of their
respective successors and permitted assigns under Paragraph 19, whether so expressed or not.

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below,
said Agreement to be effective on the Effective Date.

Name of Party: San Gabriel Valley Water Company

By: _____

Name:   M. L. Whitehead

Title:   Chief Executive Officer

Date:   August 9, 2012

9

and collecting upon a final judgment in that litigation, in addition to any other available relief. Nothing contained in this Paragraph shall be deemed to authorize, or preclude (to the extent otherwise recoverable), the recovery of costs and attorneys' fees with respect to claims as to which, pursuant to Paragraph 6 above, the releases by the Water Entities are deemed null and void, or claims that are not released by this Agreement.

25.    **Successors and Permitted Assigns**.  All covenants and agreements contained in this Agreement by or on behalf of any of the Parties shall bind and inure to the benefit of their respective successors and permitted assigns under Paragraph 19, whether so expressed or not.

IN WITNESS WHEREOF, each Party has executed this Agreement on the date set forth below, said Agreement to be effective on the Effective Date.

Name of Party: Allegheny Technologies Incorporated
                TDY Industries, LLC

By:    _Elliot S. D_____

Name:  Elliot S. Davis

Title: Senior Vice President

Date:  8 10 12

## EXHIBIT A – ADDRESSES FOR NOTICE

**City of Monterey Park**

Director of Public Works
City of Monterey Park
320 West Newmark Avenue
Monterey Park, California 91754

Copy to:

John C. Cotti, Esq.
Jenkins & Hogin LLP
Manhattan Towers
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, CA 90266
E-mail: Jcotti@localgovlaw.com
Facsimile: (310) 643-8441
Telephone: (310) 643-8448

**San Gabriel Basin Water Quality Authority**

Kenneth Manning, Executive Director
1720 W. Cameron Avenue, Suite 100
West Covina, California  91790

Copy to:

Arthur G. Kidman, Esq.
Kidman Behrens Tague LLP
650 Town Center Drive, Suite 100
Costa Mesa, California 92626-7187
E-mail: akidman@kbtlawyers.com
Facsimile:  (714) 755-3110
Telephone:  (714) 755-3100

and

Craig S. Bloomgarden, Esq.
Manatt, Phelps & Phillips, LLP
11355 W. Olympic Blvd.
Los Angeles, CA 90064
E-mail: cbloomgarden@manatt.com
Facsimile:  (310) 996-7040
Telephone:  (310) 312-4240

and

10

392534.2

20

Brent G. Cheney, Esq.
Parker, Milliken, Clark, O'Hara, Samuelian, P.C.
555 South Flower Street
Los Angeles, CA 90071-2440
E-mail: Bcheney@pmcos.com
Facsimile:     (213) 683-6669
Telephone:    (213) 683-6575

**San Gabriel Valley Water Company**

Michael L. Whitehead, President
11142 Garvey Avenue
P.O. Box 6010
El Monte, California 91734-2010

Copy to:

Timothy J. Ryan, General Counsel
11142 Garvey Avenue
P.O. Box 6010
El Monte, California  91734-2010

and

Aaron P. Allan, Esq.
Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
E-mail: aallan@glaserweil.com
Facsimile:  (310) 556-2920
Telephone:  (310) 282-6279

**Golden State Water Company**

David Chang, Vice-President
1920 West Corporate Way
Anaheim, California  92801

Copy to:

Steven L. Hoch, Esq.
Morris Polich & Purdy LLP
1055 West Seventh Street, Suite 2400
Los Angeles, California 90017
E-mail:  shoch@mpplaw.com
Facsimile:  (213) 488-1178
Telephone:  (213) 417-5158

**Allegheny Technologies Incorporated and TDY Industries, LLC**

Elliot S. Davis
Senior Vice President, General Counsel, Chief Compliance Officer and Secretary
E-mail: elliot.davis@atimetals.com
Facsimile:  412-394-3010
Telephone:  412-394-2835

Copy to:

Tiffany R. Hedgpeth, Esq.
Bingham McCutchen
355 South Grand Avenue, Suite 4400
Los Angeles, CA  90071-3106
Email:  tiffany.hedgpeth@bingham.com
Facsimile:  (213) 830-8642
Telephone:  (213) 680-6442

392534.2

## **EXHIBIT B – ADDITIONAL DISCLOSURES**

NONE

13

**EXHIBIT C – STIPULATION OF DISMISSAL**



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN GABRIEL BASIN WATER QUALITY AUTHORITY, | Case No. CV 02-4565 ABC (RCx) |
| Plaintiff, | *[Consolidated for pre-trial purposes with Cases Nos. CV 02-5909 ABC (RCx), CV 02-6340 ABC (RCx), and CV 02-6346 ABC (RCx)]* |
| v. | |
| AEROJET-GENERAL CORPORATION, et al., | **STIPULATION AND [PROPOSED] ORDER RE DISMISSAL OF ALLEGHENY TECHNOLOGIES INCORPORATED AND TDY INDUSTRIES, INC. AND RETENTION OF JURISDICTION** |
| Defendants. | |
| | Judge: Hon. Audrey B. Collins |
| | Magistrate Judge: Rosalyn M. Chapman |
| CITY OF MONTEREY PARK, | Case No. CV 02-5909 ABC (RCx) |
| Plaintiff, | |
| v. | |
| AEROJET-GENERAL CORPORATION, et al., | |
| Defendants. | |

16739:6603323.2

0

STIPULATION AND [PROPOSED] ORDER RE DISMISSAL AND RETENTION OF JURISDICTION
(No. CV 02-4565 ABC RCx)

| | |
|---|---|
| 1 | SOUTHERN CALIFORNIA WATER COMPANY, | Case No. CV 02-6340 ABC (RCx) |
| 2 | | |
| 3 | Plaintiff, | |
| | v. | |
| 4 | | |
| 5 | AEROJET-GENERAL CORPORATION, et al., | |
| 6 | Defendants. | |
| 7 | SAN GABRIEL VALLEY WATER COMPANY, | Case No. CV 02-6346 ABC (RCx) |
| 8 | | |
| 9 | Plaintiff, | |
| 10 | v. | |
| 11 | AEROJET-GENERAL CORPORATION, et al., | |
| 12 | Defendants. | |
| 13 | | |

**STIPULATION**

It is here stipulated by and between plaintiffs San Gabriel Basin Water Quality Authority ("WQA"), Golden State Water Company (formerly known as Southern California Water Company) ("GSWC"), San Gabriel Valley Water Company ("SGVWC") and the City of Monterey Park ("City") (collectively, "Water Entities"), on the one hand, and defendants Allegheny Technologies Incorporated and TDY Industries, Inc. (now known as TDY Industries, LLC) (collectively, "TDY"), on the other hand, through their respective counsel of record, as follows:

1.     The Water Entities and TDY have reached a settlement which is set forth in that Agreement Among Certain Water Entities and Allegheny Technologies Incorporated and TDY Industries, LLC ("Settlement Agreement"), a copy of which is attached hereto.

16739:6603323.2                                                 1

2.     Pursuant to the Settlement Agreement, the Court should dismiss the Water Entities' claims in the above-captioned actions against Allegheny Technologies Incorporated and TDY Industries, Inc., only, with prejudice, except to the extent subject to Paragraphs 3.D., 3.E., 3.F., and 6 of the Settlement Agreement. To the extent that the Water Entities' claims against TDY are subject to Paragraphs 3.D., 3.E., 3.F., and 6 of the Settlement Agreement, the dismissal should be without prejudice. In addition, pursuant to the Settlement Agreement, the Court should dismiss TDY Industries, Inc.'s counterclaims and third party claims, only, in the above-captioned actions, with prejudice, except to the extent subject to Paragraph 3.D. of the Settlement Agreement. To the extent that TDY Industries, Inc.'s counterclaims and third party claims are subject to Paragraph 3.D. of the Settlement Agreement, the dismissal should be without prejudice.

3.     The Court should retain jurisdiction to enforce the terms of the Settlement Agreement and resolve any disputes arising under the Settlement Agreement.

4.     Each party shall bear its own fees and costs.

Dated: _____            Manatt, Phelps & Phillips, LLP


By: _____
       Craig S. Bloomgarden
       Attorneys for Plaintiff
       SAN GABRIEL BASIN WATER
       QUALITY AUTHORITY

1   Dated: _____         Jenkins & Hogin LLP

2

3

4                                    By: _____
                                        John C. Cotti, Esq.
5                                    Attorneys for Plaintiff
                                     CITY OF MONTEREY PARK
6

7   Dated: _____         Morris Polich & Purdy LLP

8

9                                    By: _____
                                        Steven L. Hoch, Esq.
10                                   Attorneys for Plaintiff
                                     GOLDEN STATE WATER COMPANY
11

12

13  Dated: _____         Glaser Weil Fink Jacobs Howard
                                     Avchen & Shapiro LLP
14

15

16                                   By: _____
                                        Aaron P. Allan, Esq.
17                                   Attorneys for Plaintiff
                                     SAN GABRIEL VALLEY WATER
18                                   COMPANY

19

20  Dated: _____         Bingham McCutchen LLP

21

22                                   By: _____
                                        Tiffany R. Hedgpeth
23                                   Attorneys for Defendants Allegheny
                                     Technologies Incorporated and TDY
24                                   Industries, Inc.

25

26

27

28
    16739:6603323.2                           3
    STIPULATION AND [PROPOSED] ORDER RE DISMISSAL AND RETENTION OF JURISDICTION
                            (No. CV 02-4565 ABC RCx)

## **ORDER**

Pursuant to the above Stipulation, IT IS HEREBY ORDERED:

     1.    The Water Entities claims in the above-captioned actions against Allegheny Technologies Incorporated and TDY Industries, Inc. (now known as TDY Industries, LLC), only, are dismissed <u>with</u> prejudice, except to the extent subject to Paragraphs 3.D., 3.E., 3.F., and 6 of the Settlement Agreement (which Paragraphs are incorporated into this Order by this reference). To the extent that the Water Entities' claims against Allegheny Technologies Incorporated and TDY Industries, Inc. are subject to Paragraphs 3.D., 3.E., 3.F., and 6 of the Settlement Agreement, the claims are dismissed <u>without</u> prejudice. In addition, TDY Industries, Inc.'s counterclaims and third party claims, only, in the above-captioned actions are dismissed with prejudice, except to the extent subject to Paragraph 3.D. of the Settlement Agreement. To the extent that TDY Industries, Inc.'s counterclaims and third party claims are subject to Paragraph 3.D. of the Settlement Agreement, the counterclaims are dismissed without prejudice.

     2.    The Court agrees to retain jurisdiction to enforce the terms of the Settlement Agreement and resolve any disputes arising under the Settlement Agreement.

     3.    Each party shall bear its own fees and costs.

Dated: _____    By: _____

                                                     Judge of the U.S. District Court